## HALL v. PATTERSON.

*(Circuit Court, D. New Jersey.   March 6, 1891.)*

1. EXTRADITION—WARRANT—IRREGULARITY OF PROCEEDINGS—TRIAL.
   A fugitive from justice, extradited and convicted for the crime for which the warrant of extradition shows he was surrendered, cannot defeat execution of sentence by setting up irregularities in the action of the foreign court which granted the warrant.

2. CRIMINAL LAW—SENTENCE.
   A statute fixing punishment, and providing that defendant "on being convicted shall be punished" by imprisonment, does not require sentence to immediately follow conviction; and the time defendant remains in jail after conviction and before sentence, awaiting a decision on his pleas in bar to other indictments, will not be deducted from his term of imprisonment.

On *Habeas Corpus.*
*William Y. Johnson* and *H. N. Barton,* for petitioner.
*E. R. Crane* and *John P. Stockton,* Atty. Gen., for respondent.

GREEN, J.   The facts in this case, as they appear on the petition for the writ of *habeas corpus,* and in the return made by the respondent to the said writ, are these:   In 1881 William A. Hall, the petitioner, was chief clerk in the office of the comptroller of the city of Newark, in the state of New Jersey, and as such it was his duty to receive moneys paid in settlement of taxes duly levied and assessed as the same became due, and to keep a true account of the said receipts of moneys in the books of the comptroller, for that purpose provided.   While acting in this capacity Hall committed the crime of forgery, as it was alleged; the felonious acts consisting—*First,* in the making, uttering, and passing a certain check or order for the payment of money upon the National State Bank of Newark, payable to the order of one William H. Winans, for the sum of $270; and, *secondly,* in the fraudulent alteration of the cash-book and accounts kept by him in the office of the comptroller of the city of Newark, whereby an entry therein of $562.32 of cash received by him for taxes on the 18th day of March, 1881, was made to read and appear as $362.32.   At the December term, 1881, of the court of oyer and terminer held in and for the county of Essex, having jurisdiction of the crime of forgery, the grand inquest formally presented against Hall a bill of indictment, charging him with the forgery of the check.   In the mean time Hall had become a fugitive from justice, having fled to Canada, and it therefore became necessary for proceedings in extradition to be had against him, that he might be brought back to New Jersey for trial.   Accordingly, in due form of law, and pursuant to the treaty between the United States and Great Britain, ratified in 1844, relating to the extradition of persons charged with crime fleeing from one country to the other, such proceedings were begun, and were carried forward regularly, so far as the arrest of Hall upon proper complaint of the agent of the United States, by the authorities in Canada, and the subsequent examination before the proper Canadian tribunal, to

determine whether the offense charged against him was of such a character as would warrant his extradition under the provisions of the treaty referred to. When this preliminary examination had been in progress for some time, and before any judgment had been rendered in the matter, a new complaint was made against Hall by the agent of the United States, before the proper court of justice in Canada, charging him with the second act of forgery hereinbefore referred to, to-wit, the alteration of the figures of the cash-book of the comptroller, whereby the sum of $562.32, charged therein as having been received by Hall on the 18th of March, 1881, was made to read and appear $362.32. Upon making the second complaint, the proceedings then in progress against Hall based upon the first complaint were formally abandoned, and the extradition proceedings were continued thenceforth as founded upon the second complaint only. The petitioner, Hall, resisted extradition strenuously. Able counsel were retained by him to secure, if possible, his release. Every objection to the proceedings that could be taken with any show of plausibility, or which could be suggested by ingenuity, was taken. Defeat before one court only inspired a more vigorous attack, by way of appeal, in a higher, but finally it was determined in the court of last resort, the high court of appeals of Ontario, that the proceedings under which Hall had been arrested and was held in custody were regular, and in accordance with law, and that the offense lastly charged against him was of such nature that, under the treaty heretofore alluded to, he became liable to extradition, and a warrant of rendition against him was accordingly ordered. That warrant with great particularity described the criminal act alleged to have been committed by Hall, declares that it is fit and expedient that he be delivered up to justice, pursuant to the treaty in that behalf with the United States of America, and orders that the body of the said Hall shall be immediately delivered up to such person as may be authorized to receive him in the name and on behalf of the United States of America, to the end that he may be by such person, so authorized, held in custody, and taken to the said United States of America, in order that he may there be made to answer according to law, and be tried for the crimes of which he so stands accused.

The following is the statement in the warrant of the alleged crime, to answer to which Hall was rendered to the United States authorities:

"That he, the said William A. Hall, did commit the crimes of forgery and utterance of forged paper within the jurisdiction of the United States of America, to-wit, at the city of Newark, in the state of New Jersey, one of the United States of America, for that he, the said William A. Hall, on the eighteenth day of March, in the year of our Lord one thousand eight hundred and eighty-one, at the city of Newark, aforesaid, did feloniously forge a certain account and book of the comptroller of the city of Newark, aforesaid, with intent to defraud by feloniously and willfully altering, for a certain purpose of fraud, the account of moneys received by the said comptroller on the said eighteenth day of March aforesaid, at page number 271 of cash-book K of the said comptroller, from the sum of $562.32 to the sum of $362.32; and, also, for that he, the said William A. Hall, on the eighteenth day of

March, aforesaid, at the city of Newark, aforesaid, did feloniously utter, knowing the same to be forged, the aforesaid forged account and book, with intent to defraud."

Under and by virtue of this warrant Hall was delivered by the Canadian authorities into the custody of one John T. River, who was duly authorized and commissioned by the president of the United States to receive him, and by him Hall was brought to Newark, N. J., and delivered into the custody of the proper officer, to await his trial for the crimes for which he had been extradited. Such trial speedily followed the extradition. It resulted in a verdict of guilty against Hall, as he stood charged, and he was sentenced to imprisonment at hard labor in the state-prison for a term of 10 years. The conviction was on the 19th day of May, 1883. Sentence was pronounced on the 4th day of April, 1884, and the petitioner is now in confinement, undergoing that sentence. The petitioner claims that his confinement is illegal, and contrary to law, and that he is entitled to his discharge therefrom; and to obtain that he has sued out this writ of *habeas corpus*.

He assigns two reasons for his discharge: (1) That he was tried, convicted, and sentenced to punishment for a crime different from that for which he had been rendered to this government. (2) That the longest term of imprisonment which can be imposed upon one guilty of forgery is 10 years; that such imprisonment is to be imposed immediately upon conviction of the offense; that he was convicted May 19, 1883, but sentence was deferred until April 4, 1884, during which time he was in confinement in the common jail of Essex county, so that the whole term of his imprisonment became 10 years and 11 months, and was therefore illegal, as unwarranted by law; that he is entitled to have the 11 months of confinement in jail deducted from the term of 10 years imposed, and, such deduction being made, and the time allowed to be deducted by the law of New Jersey from a term of imprisonment for good behavior being also deducted, his term of imprisonment expires on the 4th day of March, 1891.

1. It is perfectly well settled that a defendant in criminal proceedings, extradited from a foreign country, can be tried only for that offense with which he was charged in the extradition proceedings, and for which he was delivered up; and, if not tried for that, or if he be tried and acquitted, he is entitled to have granted to him a reasonable time in which to leave the country before he can be arrested and held to answer for any other crime committed before extradition. *U. S.* v. *Rauscher*, 119 U. S. 407, 7 Sup. Ct. Rep. 234. If, therefore, the allegation of the petitioner were true that he was tried, convicted, and sentenced for a crime different or variant from that for which he was extradited, he would be entitled, undoubtedly, to his discharge. But, unfortunately for him, this allegation is not only not sustained, but is wholly contradicted, by the facts in this case. The return to the writ of *habeas corpus* made by the respondent, as keeper of the New Jersey state-prison, states that the petitioner is now held in custody by him under and by virtue of a judgment and sentence of the court of oyer and terminer of the county of Essex, upon

conviction of the petitioner of the crime of forgery. A copy of the bill of indictment upon which such conviction was had, and such sentence pronounced, is made a part of the return. Upon inspection of this indictment, it appears that the petitioner was therein and thereby charged, in proper legal phraseology, but with a redundance of diction which forbids a repetition of it *in ipsissimis verbis*, with the crime of forgery, in this: that he fraudulently forged and altered accounts of moneys received by the comptroller of the city of Newark on the 18th day of March, 1881, for arrears of taxes, as the same were upon page 271 of cash-book K of the said comptroller, from the sum of $562.32 to the sum of $362.32, and that the said act of forgery was accomplished by altering and changing the figure 5 of the first sum named to the figure 3, so that it should appear as 3 in the second sum named. The indictment contains several counts, but each count charges the crime of forgery, and in each count the criminal act is declared to be the forgery and the alteration of the figures, as just stated. It is apparent that this act of forgery which the bill of indictment deals with is precisely the same act of forgery stated and particularized in the warrant of rendition. There can be no pretense that the reference in the indictment is to a criminal act variant in any degree from that act described in the warrant by and under which Hall was surrendered, and for which act alone he was liable to be called to answer in that state which he left as a fugitive from justice. An inspection and comparison of the warrant and of the indictment is conclusive on this point. Such inspection and such comparison of the two documents result in a demonstration of identity of the crime charged in each, respectively.

Counsel for the petitioner ingeniously contended upon the argument that, as the proceedings in extradition were based originally upon the forgery of the check, all subsequent proceedings involving a change in the complaint against Hall, and a substitution of the criminal act of altering the figures of a cash account for the previous criminal act of forging a check, were irregular and void, and therefore could not be made the basis of those proceedings which resulted finally in the actual extradition of the petitioner. But such contention cannot be considered well grounded. The complaint of the petitioner is that his rights have been disregarded in being subjected to a trial upon a charge different from that alleged against him in Canada, and to answer which he was surrendered by the Canadian authorities. What was the charge upon which he was thus surrendered? The very best evidence of the nature and character of that charge is to be found in the official statement thereof as made by the surrendering authorities in the warrant of surrender. The warrant speaks purposely on this subject in tones that cannot be misunderstood or contradicted. It expresses as well the conclusion of the foreign government as to the nature of the act charged as its judgment of the advisability and the duty of the surrender. The great seal affixed thereto imports absolute verity of the statements. The surrender is made only because the act or acts alleged therein render the defendant actor liable to extradition. There may have been many other acts, criminal in their

nature, objected against the defendant. To him they are absolutely of no consequence. That act alone which the surrendering government declares in its warrant of surrender is within the purview of the treaty is the act which has to be met and answered. To this petitioner, therefore, it matters not what complaints were made against him in Canada; the vital matter with him is to know what complaint was considered by the Canadian authorities as justifying his extradition. The warrant is the criterion as well as the measure of his peril. Irregularities may have occurred in the proceedings by or in the manner in which he was brought within the custody of the law, but they do not avail him as a defense to the criminal act to answer which he was surrendered. The method in which a foreign government may execute its own laws, or carry into effect its own treaties, does not concern the government which obtains the extradition. There was no pretense of fraud or violence or *mala fides* in connection with the arrest of the petitioner in Canada. Had there been, it was open to him to show the one or the other in the courts of Canada, and there claim his discharge. Now, since he has been surrendered to this government, he cannot here, as a matter of defense to a crime, attack the method of his surrender, and thereby seek to defeat justice. 1 Moore, Extr. § 204; *Kelly* v. *State*, 13 Tex. App. 158.

But the contention of the petitioner is not only unsound, but it has no groundwork of facts to rest upon. It is apparent he has forgotten the important fact that the original charge of a forgery of a check in the extradition proceedings was formally withdrawn and abandoned by the complainants. The return to the writ of *habeas corpus*, as made by the respondent, states succinctly this abandonment, and the causes which led up to such action, and sets out *in extenso* the proceedings in extradition under the new complaint of forging and altering the books of the comptroller, and charges that in fact the petitioner was extradited under the latter charge. As, under the statute, he had a right to traverse the return if he saw fit, but has failed to exercise such right, the return must be taken as true and conclusive. *Evans* v. *McEwen*, 5 Crim. Law Mag. 747; *People* v. *Protectory*, 106 N. Y. 604, 13 N. E. Rep. 435.

2. The second cause assigned for the discharge of the petitioner from confinement is that, while the statute of New Jersey limits the term of imprisonment upon conviction for forgery of 10 years, this petitioner, by reason of the delay in the pronouncing of his sentence by the court in which he was convicted, during which delay he was in confinement, will be kept in confinement a term of 10 years and 11 months. The facts are these: The defendant was convicted of the crime of forgery on the 19th day of May, 1883. He was not sentenced until the 4th day of April, 1884. In the mean time he was in confinement in the common jail of Essex county. This delay in sentence was caused, it is stated, by the interposition by the petitioner of special pleas in bar to indictments for embezzlement which had been presented against him, and which issues, so raised, were by the Essex county court of oyer and terminer certified to the supreme court of New Jersey for its advisory opinion. It is not denied that, immediately upon the rendition of its opin-

ion by the supreme court, sentence was pronounced. In the mean time, however, the delay of 11 months had occurred. The words of the New Jersey statute fixing the punishment of forgery are: "And, on being thereof convicted, shall be punished by fine not exceeding three thousand dollars, or imprisonment at hard labor for any term not exceeding ten years, or both." The insistment of the counsel for petitioner was that this statute made it imperative upon the court to pronounce sentence immediately upon conviction. But I do not think this construction of the statute is maintainable. The words "and on being thereof convicted" mean, simply, that conviction of the crime is a condition precedent to the infliction of punishment, and do not refer to or limit the time in which the punishment is actually to be inflicted. As a term of imprisonment does not begin to run until the day when the sentence inflicting it is pronounced, sentence should not be unreasonably delayed. But if there be, for any cause, such delay, it is wholly within the discretion of the court pronouncing the sentence whether the intermediate imprisonment of the defendant should be deducted from the term of imprisonment imposed by sentence or not. Such discretion is not reviewable by means of a writ of *habeas corpus,* as it would not be reviewable upon a writ of error. The confinement of the petitioner in the county jail after conviction and before sentence became no part of his statutory punishment. The object of such confinement was to insure his personal presence when the court of oyer and terminer was prepared to pronounce its judgment. He suffered it voluntarily, because, under the constitution and laws of New Jersey, he had the right to tender bail for his presence when wanted, and so regain his liberty. He chose the alternative of remaining in confinement. He cannot now complain if his personal liberty was thereby restrained. Such restraint was lawful, and in due course of law.

The motion to discharge the petitioner from confinement is refused, the petition is dismissed, and the petitioner is remanded to the custody of the respondent, as keeper of the New Jersey state-prison.