**UNITED STATES of America, Plaintiff,**

**v.**

**Kurt VREEKEN and Fred R. Vreeken, Defendants.**

**No. CR 84–00048J.**

United States District Court, D. Utah, C.D.

Dec. 11, 1984.

Stewart C. Walz, Tena Campbell, Asst. U.S. Attys., Salt Lake City, Utah, for plaintiff.

James W. McConkie and Kathleen M. Adams, Parker, McKeown & McConkie, Salt Lake City, Utah, Christopher Blakesley, Professor of Intern. Law, Sacramento, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

JENKINS, Chief Judge.

This matter came before the Court on October 9, 1984, pursuant to the Defendant Kurt Vreeken's motion to dismiss the indictment against him. Stuart Walz and Tina Campbell, Assistant United States Attorneys, represented the United States; James W. McConkie and Kathleen M. Adams, both of Parker, McKeown & McConkie, and Christopher Blakesley, Professor of International Law at McGeorge School of Law, represented the defendant. After receiving several affidavits and hearing testimony, the Court denied the motion in open court and on the record, but reserved the right to set out in writing the Court's reasoning and to enter a formal order.

Vreeken asserts that his prosecution on the charge before the Court would violate an extradition treaty between the United States and Canada, and, therefore, the prosecution is improper. Although the motion is styled as a motion to dismiss the indictment, it is more analytically correct to view it as a motion to release the defendant from custody for lack of personal jurisdiction. Vreeken does not claim that the indictment is defective; he asserts only that a treaty forbids the United States from prosecuting him at this time. Analyzed as a challenge to the Court's jurisdiction over the person of the defendant, this motion presents two issues: First, whether international obligations of the United States preclude the prosecution of the defendant in a United States court on the charges in this case; and Second, whether the defendant has waived his objection to jurisdiction over his person.

## I. PROCEDURAL SETTING

Pursuant to the provisions of a treaty between the United States and Canada, the United States applied to the Government of Canada for the extradition of Kurt Vreeken. The indictment on which the application was based charged Vreeken with several counts of wire fraud. After his arrest in Canada, Vreeken sought to be released on bail pending the outcome of extradition proceedings. The Canadian Judge, a judge under the Canadian Extradition Act, heard evidence on the issue of bail and denied Vreeken's request. After consulting with Canadian counsel, who advised the defendant that resisting extradition could take more than six months and that release on bail pending extradition was unlikely, the defendant signed a waiver of extradition proceedings and consented to return voluntarily to the United States. The Canadian Court then signed an Order to Convey, which directed the Royal Canadian Mounted police to deliver Vreeken to a United States Marshal in Toronto.

After his return to the United States, the defendant was released on bail. About five months later, while his bail provisions pre-

vented him from leaving the country, the defendant was charged in a second indictment with multiple counts of tax fraud. The defendant subsequently objected to his prosecution under the second indictment.

Until the defendant filed the motion to dismiss, this case proceeded normally. On April 24, 1984, the defendant appeared voluntarily before a magistrate [1] and entered a plea of not guilty to the tax fraud charges. One week later the defendant's counsel appeared in the District Court for a scheduling conference. Trial was set for July 16, 1984, and pretrial motion cutoff, pursuant to Fed.R.Crim.P. 12(c), was set for May 25, 1984. At the end of May, on joint stipulation of the parties, the Court continued the trial date to October 16, 1984. At the same time, although the motion cutoff date had already passed, the Court extended the cutoff time to file pretrial motions to August 15.

On September 26, 1984—more than a month after the new motion cutoff date and only three weeks before trial—the defendant filed this motion to dismiss the indictment. The Court heard oral arguments on October 9, 1984, and denied the motion at that time. After a three-week trial and less than three hours of deliberation, the jury found the defendant guilty on all counts of the indictment.

## II. PROSECUTING THE DEFENDANT ON THE TAX FRAUD CHARGES DOES NOT VIOLATE THE TREATY WITH CANADA

■ The defendant challenges this Court's jurisdiction over the person of the defendant. Generally speaking, once a defendant is before the court, he may not challenge the court's jurisdiction over his person on the ground that his presence before the court is unlawful. *See United States v. Winter*, 509 F.2d 975, 985–86 (5th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39,

46 L.Ed.2d 41 (1975) (challenge to jurisdiction based on an illegal arrest overruled). This is true even if a defendant is kidnapped from a foreign country and brought into the country in violation of international law. *Ker v. Illinois*, 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421 (1886).

The lone exception to the general rule is that the defendant can successfully challenge the court's jurisdiction over his person if he is before the court in violation of an international treaty. *Cook v. United States*, 288 U.S. 102, 53 S.Ct. 305, 77 L.Ed. 641 (1927) (violation of a United States-Great Britain treaty that permitted the United States to seize any British Ship reasonably believed to be smuggling liquor, but only if the ship was within an hour's sailing distance of the coast); *United States v. Rauscher*, 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886) (violation of an extradition treaty); *see also Winter*, at 983.

The Court in *Rauscher* noted that enforcement of a treaty is the subject of international negotiations and a court can give no redress for its violation. However, the Court also reasoned that a treaty may contain provisions "which confer certain rights upon the citizens or subjects of one of the nations residing in the territorial limits of the other .... And when such rights are of a nature to be enforced in a court of justice, that court resorts to the treaty for a rule of decision for the case before it as it would to a statute." 119 U.S. at 418–19, 7 S.Ct. at 240. Because the present challenge to the Court's jurisdiction is based on treaty, the Court must examine the treaty to determine whether it confers a right on Vreeken not to be prosecuted in this case.

*A. The Treaty Does Not Limit the Court's Jurisdiction in this Case.*

The United States and Canada have signed an extradition treaty. 27 U.S.T.

---

**1.** The defendant's bail provisions prevented him from leaving the country, but they did not require him to appear at this arraignment. The defendant was not arrested, but received notice of the new charges through his attorney. In-

deed, the defendant has testified that he knew the grand jury had been investigating him for tax fraud, and that he had made arrangements with the U.S. Attorney for self surrender.

983, T.I.A.S. No. 8237 (hereinafter, *"Treaty"*). Article 12 of that treaty contains a provision known as the "rule of speciality." The rule of speciality prohibits the requesting nation (in this case, the United States) from prosecuting an extradited person for any crime other than the one for which extradition was granted. The Supreme Court, in *Rauscher*, specifically held that the rule of specialty is a right that may be enforced by the person who was extradited. In response to the argument that the treaty's provisions are an obligation of only the surrendering state, the Court concluded:

If upon the face of this treaty it could be seen that its sole object was to secure the transfer of an individual from the jurisdiction of one sovereignty to another, the argument might be sound; but as this right of transfer, the right to demand it, the obligation to grant it, the proceedings under which it takes place, all show that it is for a limited and defined purpose that the transfer is made, it is impossible to conceive of the exercise of jurisdiction in a case for any other purpose than that mentioned in the treaty, and ascertained by the proceedings under which the party is extradited, without an implication of fraud upon the rights of the party extradited, and of bad faith to the country which permitted his extradition.

119 U.S. at 421–22, 7 S.Ct. at 241–42.

The Supreme Court bolstered this conclusion with a construction of the American Extradition Act. 18 U.S.C. §§ 3181–95 (1969). The Act provides that whenever a person is brought into the United States by extradition proceedings, the President has the power to protect the accused "until the final conclusion of his trial for the offenses specified in the warrant of extradition, and until his final discharge from custody or imprisonment for or on account of such offenses, and for a reasonable time thereafter." 18 U.S.C. § 3192. The Court in *Rauscher* concluded that this was a congressional construction of the purpose and meaning of the rule of speciality, and that it conferred a right on those extradited

under such a provision. 119 U.S. at 424, 7 S.Ct. at 243.

Because the defendant has a right to challenge jurisdiction if prosecuting him would violate a treaty, it is necessary to examine the specific terms of the treaty to determine whether prosecuting Vreeken for tax fraud would violate it. Article 12 of the treaty provides as follows:

(1) A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted nor be extradited by that State to a third State unless:

(i) He has left the territory of the requesting State and has voluntarily returned to it;

(ii) He has not left the territory of the requesting State within thirty days after being free to do so; or

(iii) The requesting State has consented to his detention, trial, [or] punishment for an offense other than that for which extradition was granted or to his extradition to a third State, provided such other offense is covered by Article 2.

(2) The foregoing shall not apply to offenses committed after the extradition.

*Treaty*, at art. 12.

The defendant urges the Court to release him from custody because detaining him for trial on the tax fraud charges would violate the treaty. He asserts that he was extradited on wire fraud charges, and because he was acquitted on those charges, the United States must give him an opportunity to leave the country before it can detain or try him on the tax fraud charges.

The United States claims that the defendant waived extradition, and, accordingly, extradition was not "granted" within the meaning of the treaty. The government argues that because the treaty specifies that the rule of speciality applies only to a person for which extradition has been *granted*, prosecuting Vreeken on the second indictment would not offend the treaty.

■ The Court agrees with the United States. Although the United States requested extradition, Canada did not *grant* extradition. Therefore, the terms of the treaty do not deprive this court of jurisdiction over the person of the defendant in this case.

■ While in force, treaties are "the supreme law of the land." U.S. Const. art. VI, cl. 2. Treaties stand on the same footing of supremacy as do laws of the United States and are given authoritative effect by the courts. *Asakura v. City of Seattle,* 265 U.S. 332, 341, 44 S.Ct. 515, 68 L.Ed. 1041 (1924). In interpreting treaties, courts should give words "their ordinary meaning as understood in the public law of nations." *De Geofroy v. Riggs,* 133 U.S. 258, 271, 10 S.Ct. 295, 298, 33 L.Ed. 642 (1890). Although the Court determines that the treaty at issue here does not apply to the defendant under the circumstances of this case, in interpreting the treaty, the Court has given due consideration to President Ford's proclamation that the treaty "shall be observed and fulfilled with good faith ... by the United States of America." 27 U.S.T. 983, T.I.A.S. No. 8237.

Article 12 of the treaty itself limits the rule of speciality to persons "for which extradition has been granted." The ordinary meaning of the clause "for which extradition has been granted" limits operation of the treaty to cases in which the defendant is conveyed to the requesting state pursuant to an order of extradition. Had the parties to the treaty wanted the rule of speciality to apply to a person who returns voluntarily, they could have included language in the treaty that gave that result.[2] They did not include such language. The treaty does not limit the offenses for which a person may be detained and tried if extradition was not "granted."

There can be no doubt that the parties to the treaty knew that the language they used in the treaty did not give rule of speciality protection to a person who waives extradition. Canadian courts had previously, on three separate occasions, ruled that a fugitive who waives extradition proceedings could be tried in Canada for crimes other than the ones specified in the request for extradition. *R. v. Gagnon,* 117 C.C.C. 61, 25 C.R. 38 (1956); *R. v. Deiderich,* 24 Alta. 325, [1929] 3 W.W.R. 748, 52 C.C.C. 892, [1930] 1 D.L.R. 892 (1930) (*sub nom. R. v. Liberty*); *R. v. Flannery,* 19 Alta. 613, [1923] 3 W.W.R. 97, 40 C.C.C. 263, [1923] 3 O.L.R. 689 (1923). One of those cases, *Deiderich,* expressly noted that the treaty then in force[3] did not provide for rule of speciality protection if the fugitive waives extradition proceedings.

It would be folly for this Court now to conclude that the United States and Canada intended to change that result when the two nations entered into a new treaty. The specific language of the treaty remains substantially unchanged. Article III of the former treaty stated as follows:

No person surrendered by or to either of the High Contracting Parties shall be triable or be tried for any crime or offence, committed prior to his extradition, other than the offence for which he was surrendered, until he shall have had an opportunity of returning to the country from which he was surrendered.

**2.** Article 6 of the extradition treaty between the United States and Finland, for example, provides that

The person whose extradition has been requested may advise the appropriate authority of the requested State that he waives the necessity for a hearing on his extraditability. The requested State may thereupon cause the issuance of an order authorizing the surrender of the person sought to agents of the government of the requesting State

31 U.S.T. 944, T.I.A.S. No. 9626. Such a provision makes clear that the fugitive would not waive extradition, but only the necessity of a finding of extraditability. It would seem, although the Court need not decide the point, that the rule of speciality embodied in Article 17 of that treaty would protect a fugitive who waived the necessity of a finding of extraditability pursuant to Article 6 of the treaty.

**3.** The treaty that governed extradition between the United States and Canada until the present treaty was signed was the Extradition Convention Between the United States of America and Her Britannic Majesty, 26 Stat. 1508.

26 Stat. at 1509. The only change of concern here is that the rule of speciality in the former treaty protected fugitives who were "surrendered," while the present treaty protects fugitives for which "extradition was granted." The present language seems to apply to a smaller class of fugitives than the former language. Indeed, the change seems to codify Canada's interpretation of the former treaty. At the very least, there is no indication that the new treaty sought to change Canada's interpretation of the former treaty. Although this Court feels in no way bound by the determinations of the Canadian Courts, those courts were interpreting a treaty between the United States and Canada and do offer persuasive guidance. This Court agrees with the interpretation of the Canadian courts that the treaty does not deprive the requesting nation of jurisdiction over the person of a fugitive who waives extradition.

During the proceedings in Canada, the defendant waived extradition. He now contends that all he waived was the necessity of a finding of extraditability, and that conveying him to the Marshal in Toronto was a sovereign act of extradition. The record does not support his contention.

The "waiver and consent" Vreeken signed indicates that he was not extradited, but that he returned voluntarily:

I, KURT VREEKEN, ... do hereby freely and voluntarily waive and forego all and any of my rights under the *Extradition Act*[4] and do freely and voluntarily waive any objection to extradition from Canada and do hereby consent to return to the United States of America to be dealt with according to law, without formal extradition or proceedings of whatever kind being taken under the said *Act* or otherwise.

(Emphasis in original.) Although Vreeken did waive the necessity of a finding of extraditability, his waiver was broader than that. He specifically consented to return to the United States "without formal extradition."

The "Order to Convey" signed by the extradition judge also indicates that extradition was not granted. The first page of the order states, in part, as follows:

KURT VREEKEN has waived all his rights under *The Extradition Act*, including his right to an extradition hearing and his right to be dealt with according to the laws of Canada, and has signified to me his willingness to surrender himself voluntarily to the jurisdiction of the United States of America, there to be dealt with according to law.

(Emphasis in original.) Although it is clear from the order that Vreeken did waive the procedural rights he had under the laws of Canada, it is also clear that his return to the United States was purely voluntary. In the extradition hearing, the court stated, "I would assume that your client [speaking to Vreeken's attorney] knows full well that he can change his mind any time before he reaches the border of Canada." Vreeken was present at the time, and his attorney responded, "That's correct." His return could not have been more voluntary.[5] Whatever the term "extradition" means, it

---

**4.** The act referred to is the Canadian Extradition Act, Can.Rev.Stat. c. E–21 (1970). The provisions of the act that apply to a person extradited from Canada are mostly procedural. For example, it provides for the issuance of an arrest warrant, a. 10; for the fugitive to be brought before a judge, a. 13; for evidence to be taken, a. 14–15, 18; and for a fifteen-day waiting period after a finding of extraditability before the fugitive is surrendered to the requesting state, a. 19, 23.

**5.** Although it is true that Canada held Vreeken in custody until the Marshal took him from the Royal Canadian Mounted Police, that custody and conveyance was not a sovereign act that invokes the rule of speciality. Canada detained the defendant merely as an act of good faith toward the United States should the defendant have changed his mind about returning voluntarily. If he had changed his mind, the treaty obligated Canada to determine whether he should be extradited or not. Canada could not have been expected to set him free merely because he agreed to return to the United States voluntarily. Holding him in custody pending his voluntary return does not make the return any less voluntary.

does not include a voluntary return to the requesting state.

Accordingly, Vreeken was not extradited. And because the treaty would forbid the prosecution for tax fraud only if extradition had been granted, the prosecution in this case does not offend the treaty.[6]

*B. International Law Does Not Limit the Court's Jurisdiction in This Case.*

The defendant asserts that anytime one nation formally requests another nation to extradite a fugitive, any return of that fugitive by the requested nation—whether the fugitive returns voluntarily or not—the requesting nation should consider the fugitive to be "extradited" for purposes of the rule of speciality. "The rationale, of course, is that once begun officially, by the request for extradition or the request for provisional arrest pursuant to the extradition treaty, the return, with or without a hearing, is a sovereign act, based on the request." Defendant's Supplemental Memorandum, at p. 2.

In support of this proposition, the defendant points to *Fiocconi v. Attorney General of the United States,* 462 F.2d 475 (2d Cir.), *cert. denied,* 409 U.S. 1059, 93 S.Ct. 552, 34 L.Ed. 511 (1972). In *Fiocconi,* the fugitive was extradited to the United States as an act of comity because the extradition treaty between the United States and Italy did not cover the charged offense. The Second Circuit determined that the principle announced in *Rauscher* did not depend on the existence of a treaty: "[A] rule of international law required that the receiving country should not try an extradited person for an offense for which the surrendering country would not have granted extradition; the treaty was impor-

tant only as clarifying what offenses were or were not extraditable." *Id.* at 479. The defendant concludes from this that once a request for extradition is made, the rule of speciality applies.

The defendant's reliance on *Fiocconi* is misplaced. Fiocconi was returned to the United States kicking and screaming; Vreeken returned voluntarily. Fiocconi would not have returned absent a sovereign act returning him; Vreeken returned absent such a sovereign act. *Fiocconi* simply does not support the defendant's assertion.

The defendant's proposition that the rule of speciality applies once extradition is requested is misplaced for another reason: It focuses on the conduct of the *requesting* nation rather than on the conduct and expectations of the *requested* nation. *Rauscher* and *Fiocconi* both made clear that the paramount concern behind the rule of speciality is to protect the requested nation's sovereignty. 119 U.S. at 419–20, 7 S.Ct. at 240; 462 F.2d at 478–480.[7] The analysis in both cases looked to the conduct of the requested nation in delivering the fugitive; it looked to the expectation the requested nation had in delivering up a fugitive against his will to be prosecuted for a particular crime. There is nothing in either the conduct or the expectations of Canada in this case that conflicts with this Court's exercise of jurisdiction over the defendant. The defendant's proposition to apply the rule of speciality whenever extradition is requested—irrespective of the conduct and expectations of the requested sovereign—ignores the considerations that gave the rule life.[8]

---

**6.** A similar analysis leads to the conclusion that prosecuting Vreeken for tax fraud is not contrary to the American Extradition Act. 18 U.S.C. §§ 3181–95 (1969). The act provides that the President must protect the accused "until the conclusion of his trial for the crimes or offenses specified in the warrant of extradition." 18 U.S.C. § 3192. Because the Order of Conveyance did not specify any crimes, the defendant has no right under the rule of speciality by virtue of this act.

**7.** This is consistent with the Second Circuit's view that the rule of speciality is a privilege of the asylum state, "designed to protect its dignity and interests, rather than a right accruing to the accused." *Shapiro v. Ferrandina,* 478 F.2d 894, 906 (2d Cir.), *cert. dis'd,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973).

**8.** Following the defendant's proposed rule would lead to irrational results. For example, if the United States requested extradition of a fugitive from Mexico, and Mexico, for whatever

■ Examining the facts of the instant case in light of these considerations leads to the conclusion that the rule of speciality does not bar Vreeken's prosecution on the tax fraud charges in this case. First, Canada's conduct in conveying the defendant was minimal. Vreeken's return to the United States was purely voluntary; Canada did nothing but see him to the door. Canada's conduct in holding the defendant until the United States took custody of him was not a sovereign act sufficient to warrant invoking the rule of speciality.

Second, Canada's expectations in conveying the defendant were also minimal. There is no indication whatsoever that Canada did expect—or even reasonably would have expected—the United States not to try Vreeken for a charge other than wire fraud. The "Order of Conveyance" is no more than an authorization to allow the U.S. marshal to take custody of the defendant. It is not a warrant of extradition. It does not indicate the crimes for which Canada expected him to be tried. Most important, it does not indicate that Canada expected him to be tried for no other crimes.

Canada had no such expectations. Under Canadian law, if the fugitive waives his right to extradition proceedings, the fugitive can be tried for crimes other than the one specified in the request for extradition. *R. v. Gagnon*, 117 C.C.C. 61, 25 C.R. 38 (1956); *R. v. Deiderich*, 24 Alta. 325, [1929] 3 W.W.R. 748, 52 C.C.C. 892, [1930] 1 D.L.R. 892 (1930) (*sub nom. R. v. Liberty*); *R. v. Flannery*, 19 Alta. 613, [1923] 3 W.W.R. 97, 40 C.C.C. 263, [1923] 3 O.L.R. 689 (1923); *see also* LaForest, Extradition To and From Canada, pp. 29–30 (1961). It would be unreasonable to conclude that Canada would expect the United States to apply the contrary rule.

Under these circumstances, the United States is not acting in bad faith toward Canada. The United States' prosecution of Vreeken for a crime other than wire fraud is not contrary to any expectations Canada had when Canada allowed the United States to take custody of the defendant. The Court declines to apply the rule proposed by the defendant for the reasons stated above. Accordingly, the rule of speciality does not deprive this court of jurisdiction over the person of the defendant.

*C. This Court Will Not Consider Whether the Waiver of Extradition Was a Knowing Waiver.*

■ The defendant next claims that if he waived extradition, and with it, the rule of speciality, his waiver was not a knowing waiver. He does not indicate *why* the waiver must be knowing, other than by a general appeal to justice and fair play. It cannot be disputed that had Vreeken returned to the United States without the United States requesting extradition, he would have subjected himself to the jurisdiction of the United States for all purposes. Stated differently, by returning voluntarily, he would have waived the rule of speciality whether he knew about it or not.

The curious question this motion presents is whether a waiver that need not be knowing becomes a waiver that must be knowing merely because the United States requested extradition, or merely because the Canadian court held a hearing to determine whether the return was voluntary. For the purpose of determining jurisdiction under American law, the Court can find no persuasive reason to distinguish between a voluntary return to the United States with a hearing in Canada, and a voluntary return without such a hearing. In both cases the fugitive subjects himself voluntarily to the jurisdiction of the court for all purposes—not for just a limited purpose as if he had been formally extradited.

This Court reaches this same conclusion for a different reason as well. Courts in

reason, considered the fugitive undesirable and merely pushed him across the boarder into the arms of a marshal, with no extradition proceedings whatsoever, the rule of speciality as applied by the defendant's proposition would require that the fugitive be tried for only the offenses specified in the request. That would be true even though there would be no risk of violating an international agreement, even though Mexico would not be offended by a trial for another crime, and even though Mexico would have absolutely no concern for the fugitive.

the United States should not place themselves in the position of determining whether the actions of a foreign tribunal were adequate or inadequate. In *Hall v. Patterson,* 45 Fed. 352 (C.C.D.N.J., 1891), the Circuit Court ruled that once a fugitive had been extradited, he could not challenge the extradition:

> Irregularities may have occurred in the proceedings by or in the manner in which he was brought within the custody of the law, but they do not avail him as a defense to the criminal act to answer which he was surrendered. The method in which a foreign government may execute its own laws, or carry into effect its own treaties, does not concern the government which obtains the extradition. There was no pretense of fraud or violence, or *mala fides* in connection with the arrest of the petitioner in Canada. Had there been, it was open to him to show the one or the other in the courts of Canada, and there claim his discharge. Now, since he has been surrendered to this government, he cannot here, as a matter of defense to a crime, attack the method of his surrender.

*Id.* at 356. *See also, Greene v. United States,* 154 F.2d 401, 407–08 (5th Cir.), *cert. denied,* 207 U.S. 596, 28 S.Ct. 261, 52 L.Ed. 357 (1907); *Taylor v. Jackson,* 470 F.Supp. 1290, 1292 (S.D.N.Y.1979).

■ Similarly, once a foreign tribunal has determined that a fugitive wants to waive extradition and return voluntarily to the United States, this Court will not examine the basis of that finding. In essence, what the defendant asks this Court to do is to rule that the Canadian judge erred in not informing the defendant that the defendant was waiving the rule of speciality. To do so would be stepping beyond the bounds of judicial propriety. If Canada did not abide by its obligation to allow Vreeken "the

right to use all remedies and recourses provided by [the] law" of Canada, *Treaty,* at art. 8, that is a matter of concern for the State Department, not for the courts. This Court simply will not consider the issue and intimates no finding or opinion concerning it.

Accordingly, the rule of speciality does not protect the defendant. He returned to the United States voluntarily and subjected himself at that time to the jurisdiction of courts in the United States for all purposes. The defendant's motion must therefore be denied.

### III. THE DEFENDANT HAS WAIVED HIS OBJECTION TO THE COURT'S JURISDICTION

■ Even if the rule of speciality protected the defendant and could operate to deprive this court of jurisdiction over the defendant, the defendant has waived his objection to jurisdiction. The Federal Rules of Criminal Procedure require a defendant to make all objections based on defects in the institution of the prosecution at or prior to the time set by the court for making pretrial motions. Fed.R.Crim.P. 12(f); *see also* Fed.R.Crim.P. 12(b)(1) & 12(c).[9] Failure to make an objection constitutes waiver of the objection. A challenge to the court's jurisdiction over the person of the defendant is an objection based on a defect "in the institution of the prosecution," as contemplated by the rule. *Sewell v. United States,* 406 F.2d 1289, 1292 (8th Cir.1969); *United States v. Rosenberg,* 195 F.2d 583, 602–03 (2d Cir.), *cert. denied,* 344 U.S. 889, 73 S.Ct. 134, 97 L.Ed. 687 (1952); *Pon v. United States,* 168 F.2d 373, 374 (1st Cir.1948). Therefore, the defendant's failure to object to the Court's lack of jurisdiction prior to August 15, 1984, con-

---

9. There is support for the proposition that an objection to personal jurisdiction must be made prior to plea. *Ford v. United States,* 273 U.S. 593, 606, 47 S.Ct. 531, 535, 71 L.Ed. 793 (1927) ("plea to the jurisdiction must precede the plea of not guilty"); *Evans v. United States,* 325 F.2d 596, 602 (8th Cir.1963) (dictum); *Pon v. United States,* 168 F.2d 373, 374 (1st Cir.1948) (dictum);

*In Re David,* 390 F.Supp. 521, 523 (E.D.Ill.1975) (guilty plea waived objection to personal jurisdiction). *But see, United States v. Cadena,* 585 F.2d 1252 (5th Cir.1978). The question appears to be whether the Rules were intended to overrule *Ford.* However, because the objection was not timely under the Rules, the Court does not need to reach this interesting issue.

stituted waiver of that objection.[10] *See Stevenson v. United States*, 381 F.2d 142, 144 (9th Cir.1967) (motion on day of trial not timely); *cf., United States v. Cadena*, 585 F.2d 1252, 1260 (5th Cir.1978) (objection within time for pretrial motions was timely).

Although the Court, for cause shown, may grant relief from the waiver, no cause has been shown. The defendant's only showing is that "counsel for the Defendants was very involved in another criminal trial at the time the motion cutoff date occured." Memorandum in Support of Motion for Leave, at p. 2. That showing is insufficient. The rule and scheduling order do not require the defendant to file objections in the eleventh hour; they require only that he file motions before the cutoff time fixed by the Court. The defendant had nearly four months to file pretrial motions. The extension he received more than tripled the amount of time available. The defendant cannot wait until the government is prepared to go to trial before he objects to his presence before the Court.

The Court sets deadlines so that the Court will have sufficient time to carefully consider the important matters before it. The defendant's claim here that he had too little time to research and file his jurisdictional objection is without merit. Four months is sufficient time to research virtually any objection to jurisdiction.

The Court notes in conclusion that the defendant's conduct both before and, more particularly, after his return to the United States is wholly inconsistent with his objection to the Court's exercise of jurisdiction over him. Vreeken has testified that before the indictment that led to the extradition request was filed, he had made arrangements for self surrender on the contemplated tax fraud charges. He formally and in writing consented to his return to the United States to be dealt with according to law. The Canadian court order re-

cites that Kurt Vreeken "has signified to me his willingness to surrender himself voluntarily to the jurisdiction of the United States of America."

After his return, he undertook to defend the tax fraud charges on the merits. He entered a plea, appeared at scheduling conferences, sought to continue the initial trial date, and undertook discovery. He has testified repeatedly that the United States, and more particularly, Utah, has been his home, and that he intends to continue to make it his home. All of these acts, taken together, are simply inconsistent with the defendant's assertion that this Court has no jurisdiction over him. If he ever did have a valid objection to jurisdiction, which in the opinion of this Court he did not, he waived that objection by his failure to raise it timely both in the United States and in Canada, and by a pattern of conduct that is inconsistent with the objection. It is simply too late.

Therefore, the defendant's motion that the indictment against him be dismissed for lack of jurisdiction over the person of the defendant is denied.

---

**10.** Rule 12(b)(2) indicates that objections to jurisdiction may be brought at any time, and are not waived by failure to bring them within the time set by the court. This refers to subject matter jurisdiction, not personal jurisdiction.

*Sewell v. United States*, 406 F.2d 1289, 1292 (8th Cir.1969); *Pon v. United States*, 168 F.2d 373, 374 (1st Cir.1948). *See also*, 8 Moore, Moore's Federal Practice, at 12–19.