[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 22, 2010
JOHN LEY
ACTING CLERK

No. 08-12588

D. C. Docket No. 04-20159-CR-ASG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MANUEL ISAAC MARQUEZ, SR.,
a.k.a. Manuel Isaac Marquez-Lopez, etc.

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

(January 22, 2010)

Before WILSON and ANDERSON, Circuit Judges, and RESTANI,* Judge.

RESTANI, Judge:

---

*Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

Manuel Isaac Marquez, Sr. appeals his conviction for conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically a conspiracy to violate 18 U.S.C. § 1962(c) by unlawfully conducting and participating in the conduct of a criminal enterprise through a pattern of racketeering activity, and through the collection of unlawful debt. Marquez challenges his extradition, the district court's deferral of witness disclosure, and the denial of his motions for severance or mistrial, motion to arrest judgment and motion for a new trial. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

On March 16, 2004, a grand jury in the Southern District of Florida returned a two-count indictment charging Marquez and twenty-four co-defendants with RICO conspiracy through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d), and illegal gambling, in violation of 18 U.S.C. § 1955. Two days later, the Spanish authorities arrested Marquez in Madrid on a provisional arrest warrant tendered by the United States to Spain pursuant to the Treaty on Extradition Between the United States of America and Spain ("Treaty"). In Spain, Marquez contested his pending extradition, and both the Criminal Division of the National Criminal Court and the court upon reconsideration en banc denied his

claim that the extradition request violated the Treaty.

In April 2005, Marquez was extradited to the United States and arrested. A grand jury returned a superseding indictment in May 2005, which retained the RICO conspiracy charge and dropped the substantive gambling count. The indictment added, as an alternative theory of liability under the RICO conspiracy charge, the collection of unlawful debts incurred and contracted through illegal gambling activity as defined in 18 U.S.C. § 1961(6). Trial began in January 2006, and in July 2006 the jury found Marquez guilty of a pattern of racketeering activity, the collection of unlawful debt, and as to each of the twenty-eight predicate acts listed against him. The court sentenced Marquez to 240 months' incarceration, three years' supervised release, $69,600 in restitution, and a $100 assessment.

## II. DISCUSSION

A.    **Extradition Challenges**

Initially, Marquez appeals his conviction because he alleges that his extradition to the United States violated the "rule of specialty"[1] and the "rule of

---

[1] Under the rule of specialty "the requesting state, which secures the surrender of a person, can prosecute that person only for the offense for which he or she was surrendered by the requested state or else must allow that person an opportunity to leave . . . ." United States v. Herbage, 850 F.2d 1463, 1465 (11th Cir. 1988) (internal quotation marks and citation omitted); see Treaty on Extradition, U.S.-Spain, May 29, 1970, art. XIII, 22 U.S.T. 737.

dual criminality."[2]  An alleged violation of an extradition treaty is subject to plenary review.  See United States v. Puentes, 50 F.3d 1567, 1575 (11th Cir. 1995).  Marquez raises several issues including: (1) whether the fifth superseding indictment changed the basis under which Spain agreed to extradite Marquez, (2) whether the extradition request was so vague as to render it impossible for the Spanish courts to determine whether the rule of dual criminality was satisfied, (3) whether the Treaty adopted a Continental or Anglo-Saxon standard of evaluating extradition requests, (4) whether the applicable Treaty is the one in effect at the time of extradition or at the time of the alleged crime, and (5) if it is the latter, whether Marquez's offenses were time-barred by Spanish law.  We need not reach those issues, however, as we agree with the district court that Marquez failed to raise the objection to his extradition in a timely manner.

The Federal Rules of Criminal Procedure require a defendant to make "a motion alleging a defect in instituting the prosecution" by the deadline set by the court for pretrial motions.  Fed. R. Crim. P. 12(b)(3)(A), (c).  Failure to make a timely objection constitutes a waiver of the objection.  Fed. R. Crim. P. 12(e).  A

---

[2] Under the rule of dual criminality a person may be extradited only "when his actions constitute an offense in both the requesting and requested states."  Herbage, 850 F.2d at 1465; see Second Supplementary Treaty on Extradition, U.S.-Spain, Feb. 9, 1988, art. II, S. Treaty Doc. No. 102-24.

challenge to personal jurisdiction is a claim of defect in instituting the prosecution, and such a challenge is to be raised pursuant to Federal Rule of Criminal Procedure 12. See United States v. Grote, 632 F.2d 387, 388 (5th Cir. 1980);[3] see also United States v. Anderson, 472 F.3d 662, 668 (9th Cir. 2006).

Because the rules of specialty and dual criminality bar prosecution of an extradited defendant for some offenses but not others, the doctrines initially may appear to limit the court's subject matter jurisdiction. See United States v. Vreeken, 803 F.2d 1085, 1088 (10th Cir. 1986). The extradition process, however, is the means by which a requesting country obtains personal jurisdiction over the defendant. See Anderson, 472 F.3d at 666; Puentes, 50 F.3d at 1573; Vreeken, 803 F.2d at 1088. Consequently, a claim of a violation of the rules of specialty and dual criminality raises the question of whether the extradition process conferred personal jurisdiction over the defendant.[4] See United States v.

---

[3] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

[4] Further support for the proposition that the rules of specialty and dual criminality affect a court's personal jurisdiction over the extradited defendant, rather than subject matter jurisdiction, is the ability of a defendant to waive the protection offered by either rule. See Vreeken, 803 F.2d at 1089 (discussing a defendant's ability to waive the rule of specialty). A defendant may decline an opportunity to leave the country and effectively consent to a court's jurisdiction to try him on charges other than those stated in the extradition. See id. Similarly, a defendant may effectively consent to be tried on charges that do not constitute an offense in the surrendering state. It is well-settled that although parties can waive objections to personal jurisdiction, they cannot do so with respect to subject matter jurisdiction. Ins. Corp. of Ir. v.

(continued...)

5

Rauscher, 119 U.S. 407, 409–10, 419–30, 433 (1886) (concluding that the lower court "did not have jurisdiction of the person at that time, so as to subject him to trial" under the doctrine of specialty); Anderson, 472 F.3d at 668 n.3 (stating that the defendant was not precluded from challenging the court's personal jurisdiction over him based on the rules of specialty and dual criminality); United States v. Levy, 947 F.2d 1032, 1034 (2d Cir. 1991) (stating that "[t]he doctrine [of specialty] limits the personal jurisdiction of the domestic court."). Thus, a claim that the extradition violates the rules of specialty and dual criminality is a challenge to the court's personal jurisdiction over the defendant and must be raised in a pretrial motion pursuant to Rule 12.

The district court set October 14, 2005 as the final deadline for submission of pretrial motions. Marquez did not assert the rules of specialty or dual criminality as a bar to his prosecution until he filed a motion to arrest judgment on March 3, 2008.[5] Thus, Marquez waived his right to assert the protection of the

---

[4](...continued)
Compagnie des Bauxites de Guinee, 456 U.S. 694, 701–05 (1982). "Indeed, the courts must raise a lack of subject matter jurisdiction even if the parties have not." Vreeken, 803 F.2d at 1089. Thus, the fact that a defendant can waive these rights further supports the proposition that the rules of specialty and dual criminality affect a court's personal jurisdiction over the defendant.

[5] Although Marquez does not ground his rules of specialty and dual criminality arguments in Federal Rule of Criminal Procedure 34, these arguments are copied in their entirety from his previous Rule 34 motion. Marquez erroneously argues that the court should "arrest judgment"

(continued...)

rules of specialty and dual criminality.[6]

## B.    Other Motions

Marquez also contends that the district court erred when it denied: (1) a motion alleging deprivation of a fair trial because the district court delayed disclosure of discovery that pertained to some witnesses pursuant to Federal Rule of Criminal Procedure 16, (2) a motion for a new trial, pursuant to Federal Rule of Criminal Procedure 33, because the district court admitted evidence that was later excluded and the government violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972); and the Jencks Act, 18 U.S.C. § 3500, and (3) a motion for severance or mistrial, pursuant to Federal Rule of Criminal Procedure 14, because the closing arguments of codefendant Jose Miguel Battle Junior were antagonistic to his theory of defense.

---

[5](...continued)
because his extradition violated the two doctrines. Rule 34(a)(2) states that "the court must arrest judgment if . . . the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34(a)(2). The district court had subject matter jurisdiction over the two "charged offenses" against Marquez, pursuant to 18 U.S.C. § 3231, because the offenses are crimes against the laws of the United States. Because alleged violations of the rules of specialty and dual criminality attack the validity of an extradition, and the extradition process is the means by which personal jurisdiction over the defendant is obtained, Marquez's claims attack the court's personal jurisdiction and not jurisdiction over the offense itself. See Anderson, 472 F.3d at 666, 668 n.3.

[6] Rule 12(e) provides that a court may grant relief from a waiver upon a showing of good cause. Fed. R. Crim. P. 12(e). Marquez does not assert "good cause" to warrant relief from waiver here, nor does he provide an explanation for his failure to raise a timely 12(b) motion. Consequently, this Court does not find good cause warranting relief from the waiver.

The district court's denial of the motions is reviewed for abuse of discretion. See United States v. Garcia, 405 F.3d 1260, 1272 (11th Cir. 2005) (per curiam) (motions for mistrial and motions for severance); United States v. Lee, 68 F.3d 1267, 1273 (11th Cir. 1995) (motion for new trial); United States v. Turner, 871 F.2d 1574, 1580 (11th Cir. 1989) (discovery decisions). We have read, heard, and considered the arguments carefully and find that the district court did not abuse its discretion in denying these motions.

### III. CONCLUSION

Because the district court properly denied Marquez's motions, we affirm the judgment of the district court. AFFIRMED.