UNITED STATES of America,
Plaintiff–Appellee,

v.

Alex William HERBAGE,
Defendant–Appellant.

No. 87–3816
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Aug. 1, 1988.

H. Jay Stevens, Federal Public Defender, Orlando, Fla., for defendant-appellant.

Gary C. Librick, Asst. U.S. Atty., Orlando, Fla., J. Gaston Williams, Fraud Section, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before HILL, FAY and EDMONDSON, Circuit Judges.

EDMONDSON, Circuit Judge:

In August 1985 Alex William Herbage was indicted in the Middle District of Florida on twenty-three counts of mail fraud and on two counts of interstate or foreign transportation of fraudulently obtained money or property, in violation of 18 U.S.C. secs. 1341 and 2314.[1] Herbage, a British citizen, was residing in England at the time the indictment was entered. The United States therefore sought and won Herbage's extradition from Great Britain; Herbage was delivered into United States custody in December 1986. In August 1987 Herbage pleaded guilty to three counts of mail fraud and was then sentenced to three consecutive five-year terms of imprisonment.

In this appeal Herbage challenges the jurisdiction of the United States court. Herbage alleges that the case against him must be dismissed because it violates the "principle of specialty"—that is, that he has been charged with crimes that were not set out in the extradition warrant presented to the British government. Because we determine that this claim is without merit, we affirm Herbage's convictions and sentences.[2]

1. Herbage, an international commodities broker, had allegedly defrauded approximately 3,000 individuals of some $46 million dollars through fraudulent investment schemes.

2. Herbage previously raised this claim in a habeas corpus petition while his prosecution was pending. The district court dismissed the petition, determining that the claim was to be raised in the criminal action itself. Herbage explicitly preserved this jurisdictional challenge when he entered into the plea agreement with the government.

■ International custom in extradition is now encompassed in most formal extradition agreements between nations. Most extradition treaties contain language setting forth the dual or double criminality principle and the specialty principle and expressing what will constitute extraditable offenses.

"Double criminality refers to the characterization of the relator's criminal conduct insofar as it constitutes an offense under the laws of the respective states.... 'Double criminality' is in effect a reciprocity requirement which is intended to ensure each of the respective states that they (and the relator) can rely on corresponding treatment, and that no state shall use its processes to surrender a person for conduct which it does not characterize as criminal." M. Bassiouni, *International Extradition: United States Law and Practice* vol. 1, ch. 7, sec. 3, pp. 324–25 (2d rev. ed. Nov. 1987). In short, an individual will be extradited under a treaty containing a double criminality provision only when his actions constitute an offense in both the requesting and requested states.

Not all conduct that may be a crime in both requesting and requested states will be subject to extradition. In those cases where a treaty governs extradition relations, the treaties "either list the offenses for which extradition shall be granted or designate a formula by which to determine extraditable offenses." *Id.*, vol. 1, ch. 7, sec. 4.1, p. 328.

The specialty principle is a corollary to the requirements of double criminality and extraditable offenses. *Id.* "This principle stands for the proposition that the requesting state, which secures the surrender of a person, can prosecute that person only for the offense for which he or she was surrendered by the requested state or else must allow that person an opportunity to leave the prosecuting state to which he or she had been surrendered." *Id.*, vol. 1, ch. 7, sec. 7, pp. 359–60; *see also, Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir. 1973).

The Anglo–American extradition treaty under which appellant Herbage was extradicted[3] contains requirements of double criminality (Article III),[4] specialty (Article XII),[5] and lists those offenses that are to be extraditable ("Schedule: List of Offenses referred to in Article III").[6]

Because of the requirements of double criminality and extraditable offenses, the offenses against American law charged against Herbage were analogized to British offenses in the draft charges before the British magistrate; these draft charges

---

3. *Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland,* June 8, 1972/October 21, 1976, 28 UST 227, TIAS No. 8468.

4. Paragraph 1 of Article III reads:
 (1) Extradition shall be granted for an act or omission the facts of which disclose an offense within any of the descriptions listed in the Schedule annexed to this Treaty, which is an integral part of the Treaty, or any other offense, if:
 (a) the offense is punishable under the law of both Parties by imprisonment or other form of detention for more than one year or by the death penalty;
 (b) the offense is extraditable under the relevant law, being the law of the United Kingdom or other territory to which this Treaty applies by virtue of sub-paragraph (1)(a) of Article II; and
 (c) the offense constitutes a felony under the law of the United States of America.

5. Paragraph 1 of Article XII reads:

 (1) A person extradited shall not be detained or proceeded against in the territory of the requesting Party for any offense other than an extraditable offense established by the facts in respect of which his extradition has been granted, or on account of any other matters, not be extradited by that Party to a third State—
 (a) until after he has returned to the territory of the requested Party; or
 (b) until the expiration of thirty days after he has been free to return to the territory of the requested Party.

6. The Schedule includes the following offenses, pertinent to Herbage's case:
 16. Receiving or otherwise handling any goods, money, valuable securities or other property, knowing the same to have been stolen or unlawfully obtained.
 17. Obtaining property, money or valuable securities by false pretenses or other form of deception.
 . . . . .
 19. False accounting.

were only one of several documents before the magistrate. Counts 1–9 of the American indictment were analogized to violations of section 15 of the British Theft Act (obtaining property by deception); counts 10–23 were considered under section 17(b)(2) of the same British act (false accounting); and counts 24–25 were considered under section 22(1) of the act (handling stolen goods). In granting the extradition order, the British magistrate necessarily determined that, in the light of the evidence presented, the conduct charged would have violated British law (therefore satisfying the element of double criminality) and was also an extraditable offense.

On the basis of this British formulation of the charges, Herbage now contends that he was extradited only for trial on fraud charges, not on charges concerning misuse of the mails. He asserts that his convictions under the United States mail fraud statute were therefore unauthorized by the British government and violates the principle of specialty.

 For purposes of this case, we assume, without deciding, that an individual has standing to allege a violation of the specialty principle.[7] A reading of the record clearly indicates that the British courts which considered the United States' request for Herbage's extradition were aware of the exact mail fraud charges brought against him by the United States. In July 1986, the justices of the High Court of Justice, Queen's Bench Division (Divisional Court) heard Herbage's application for habeas corpus, which challenged the magistrate's order that Herbage be extradited to the United States. The transcript of these July 1986 proceedings indicates that a copy of the original United States indictment had been before the magistrate who originally considered the extradition request. The record also indicates that these courts were aware that the United Kingdom recognizes, pursuant to the Anglo–American extradition treaty, that use of the mails is but a jurisdictional element of the United States federal crime of mail fraud.[8] Herbage's argument that misuse of the mails is a substantive crime different from ordinary fraud for extradition purposes is unavailing.

In the light of the treaty language and the facts of the case, it is evident that Herbage was convicted of the identical crimes for which he was extradited. There has been no violation of the principle of specialty, and the district court correctly denied Herbage's motion to dismiss. *Cf. United States v. Paroutian*, 299 F.2d 486 (2d Cir.1962) (specialty principle not violated where defendant, extradited from Lebanon for narcotics trafficking on the basis of an indictment from the Southern District of New York, was actually tried under an indictment from the Eastern District of New York which included two drug counts

---

7. There is debate about whether, theoretically, the principle of specialty is a right of the individual who is extradited or of the surrendering sovereign and about whether, practically, it is the individual that should be allowed to vindicate this right. *See, e.g., United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir.) ("[T]he protection [of specialty] exists only to the extent that the surrendering country wishes.... However, the person extradited may raise whatever objections the rendering county might have."), *cert. denied*, —— U.S. ——, 107 S.Ct. 652, 93 L.Ed.2d 707 (1986); Note, *Toward a More Principled Approach to the Principle of Specialty*, 12 Cornell Int'l L.J. 309 (1979). The Supreme Court opinion which recognizes this principle speaks of a violation of the principle as involving both the party extradited and the surrendering country. *See United States v. Rauscher*, 119 U.S. 407, 422, 7 S.Ct. 234, 242, 30 L.Ed. 425 (1886).

8. The Protocol of Signature of the extradition treaty reads in pertinent part:

At the time of signing this day the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland (hereinafter referred to as "the Treaty"), the undersigned have agreed as follows:

(1) Article III of the Treaty shall permit the Government of the United States of America to obtain the extradition of a person for an offense to which the Treaty relates when United States Federal jurisdiction is based upon interstate transport or transportation *or the use of the mails* or of interstate facilities, *these aspects being jurisdictional only.* (emphasis added)

not covered in the indictment under which he was extradited).

Herbage's convictions and sentences are AFFIRMED.