Roberto Castro POLO, Petitioner,

v.

Daniel HORGAN, U.S. Marshal for the Southern District of Florida; Michael Fitzpatrick, Warden, Metropolitan Correctional Center, Miami, Florida, Respondents.

No. 93–0482–CIV.

United States District Court, S.D. Florida.

July 12, 1993.

Edward R. Shohat, Bierman, Shohat, Loewy & Perry, P.A., Miami, FL, for petitioner.

William K. Hoyt, Asst. U.S. Atty., Miami, FL, for respondents.

## AMENDED ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

MORENO, District Judge.

THIS CAUSE came before the Court upon Roberto Castro Polo's Petition for Writ of *Habeas Corpus* filed on March 11, 1993. Polo has been detained in the custody of the United States pursuant to an order by United States Magistrate Judge Ted E. Bandstra, who certified his extradition under the treaty between the United States and Switzerland. The extradition order has been issued but stayed by this Court pending review of the petition for writ of habeas corpus.

The basis for the Swiss extradition warrant is that Polo ran an investment firm in Geneva, Switzerland, with the limited authority to invest in short-term time deposits. Subsequently, he allegedly spent substantial funds on artwork, either for investment purposes on behalf of his clients or for personal use, and, after repeated demands for the investment money back by the investors, the funds have not been returned.

Upon this petition for *habeas corpus* relief, Polo claims that his crimes are not extraditable under the treaty, and that, even if they were, the government has not proffered competent evidence sufficient to uphold an extradition. Further, Polo claims that Swiss territorial jurisdiction was not adequately demonstrated at the hearing before Magistrate Judge Ted Bandstra to meet the requirements of the treaty.

The task which faced Magistrate Bandstra at the extradition hearing was threefold: to determine whether 1) the crimes listed in the Swiss extradition request were crimes for which Polo could be extradited pursuant to the extradition treaty, 2) the evidence presented by the Swiss Government was sufficient to sustain these charges, and 3) the alleged offenses occurred within the territory of Switzerland as required by the Treaty. Following a hearing held on December 14, 1992, Magistrate Bandstra found that the government had satisfied all three elements. Hence, Polo's only recourse to the Magistrate's extradition certification is to file a petition for writ of *habeas corpus*.

### SCOPE OF REVIEW

The scope of this Court's limited review was most recently reiterated by Circuit Judge Susan Black.

The inquiry conducted by an "extradition magistrate" is limited. *See* 18 U.S.C. §§ 3181–95. The extradition magistrate conducts a hearing simply to determine whether there is "evidence sufficient to sustain the charge [against the defendant] under the provision of the proper treaty or convention." 18 U.S.C. § 3184. If the evidence is sufficient, the extradition magistrate makes a finding of extraditability and certifies the case to the Secretary of State. *Id.*

Habeas corpus review of an extradition magistrate's order is similarly restricted. Review is limited to determining "whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez v. Phillips*, 268 U.S. 311, 312 [45 S.Ct. 541, 542, 69 L.Ed. 970] (1925) (Holmes, J.); *see also Escobedo v. United States*, 623 F.2d 1098, 1101 (5th Cir.), *cert. denied*, 449 U.S. 1036 [101 S.Ct. 612, 66 L.Ed.2d 497] (1980).

*Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 828 (11th Cir.1993). Thus, this Court is limited to review Magistrate Bandstra's jurisdiction, the extraditable nature of the offenses, and whether there was any evidence

warranting finding that there were reasonable grounds to believe the accused guilty.

## JURISDICTION

It is undisputed that Magistrate Bandstra had proper jurisdiction pursuant to 18 U.S.C. § 3184.

## EXTRADITABLE NATURE OF THE OFFENSES

■ For an individual to be extradited, the crime charged by the requesting state must be specifically enumerated in the treaty between the two states [1] and it must also be a crime in both the requesting and refuge state.[2] The latter is known as the dual criminality requirement and is specifically provided for in the United States/Switzerland treaty.[3] Upon a petition for habeas corpus relief from an international extradition order, both the dual criminality requirement and the question whether the offense comes within the treaty are subject to *de novo* review. *Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir.), *cert. denied*, 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986). The Swiss government requests Polo's extradition so that it can try Polo for the criminal offenses of fraud, embezzlement, and unfaithful management, sections 148, 140, and 159, respectively, of the Swiss Penal Code.

■ As to the fraud charge, the alleged violation of Swiss Penal Code § 148, the Court finds that the dual criminality requirement has been satisfied. The Court finds that fraud, as alleged in the Swiss extradition warrant, is a crime in Switzerland. The warrant signed by the Swiss Magistrate states:

The facts described above constitute the following crimes under the Swiss Penal Code: ... Embezzlement, (Article 148), defined as the design to procure for oneself or to procure for a third party an unjust enrichment by knowingly leading a

person into error by false affirmations or by the concealment of true facts....

Swiss Extradition Warrant at 16. The Court will not analyze or second guess a requesting country's interpretation of its own laws. "While our courts should guarantee that all persons on our soil receive due process under our laws, that power does not extend to overseeing the criminal justice system of other countries.... We are ... not expected to become experts in the laws of foreign nations." *In re Assarsson*, 635 F.2d 1237, 1244 (7th Cir.1980), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 325 (1981). "It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation. Such an assumption would directly conflict with the principle of comity upon which extradition is based." *Jhirad v. Ferrandina*, 536 F.2d 478, 484–85 (2d Cir.), *cert. denied*, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976).

Concerning the second prong of dual criminality, the Court finds that fraud, as defined in Article 148 of the Swiss Penal Code, is also a crime in the State of Florida. Section 812.014(1) of the Florida Statutes lists theft offenses:

A person commits theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit therefrom. (b) Appropriate the property to his own use or to the use of any person not entitled thereto.

Further, Fla.Stat. § 812.012(2)(d) states: " 'Obtains or uses' means any manner of: ... [c]onduct previously known as stealing; larceny; purloining; abstracting; embezzlement; misapplication; misappropriation; conversion; or obtaining money or property by false pretenses, fraud, or deception...." Hence, fraud as alleged in the Swiss extradition warrant is criminal in both Switzerland

---

**1.** *United States v. Herbage*, 850 F.2d 1463 (11th Cir.1988), *cert. denied*, 489 U.S. 1027, 109 S.Ct. 1158, 103 L.Ed.2d 217 (1989).

**2.** *Factor v. Laubenheimer*, 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315 (1933).

**3.** Article II of the Treaty states: "Extradition shall be granted for the following crimes and offenses, provided they are punishable under the laws of the place of refuge and under those of the State making the requisition...."

and the State of Florida, thereby establishing dual criminality.

Furthermore, in accordance with *United States v. Herbage*, 850 F.2d 1463 (11th Cir. 1988), *cert. denied*, 489 U.S. 1027, 109 S.Ct. 1158, 103 L.Ed.2d 217 (1989),[4] the Court finds that fraud is specifically enumerated as an extraditable crime in the Treaty. Article II of the Treaty states:

> Extradition shall be granted for the following crimes and offenses, provided they are punishable under the laws of the place of refuge and under those of the State making the requisition....
>
> 7. Fraud or breach of trust, committed by a fiduciary, attorney, banker, administrator of the estate of a third person, or by the president, a member or officer of a corporation or association....

Consequently, the Court concludes that fraud as alleged by the Swiss Magistrate is an extraditable offense. It is specifically enumerated in the treaty and meets the dual criminality requirement.

■ Regarding the embezzlement charge of the Swiss warrant, the Court finds that it is an extraditable offense. The dual criminality requirement is met and the offense is covered by the treaty. As to dual criminality, the Court finds that the offense is a crime in Switzerland. The Swiss magistrate stated, after reviewing the facts of the case, that

> The facts described above constitute the following crimes under the Swiss Penal Code: Breach of Trust, (Article 148), defined as the misappropriation of property belonging to others and having been entrusted to a person who, unjustly, uses for his benefit or the benefit of a third party a fungible thing, especially a sum of money having been entrusted to such person....

Swiss Extradition Warrant at 16. The Court finds this sufficient to establish that embezzlement is a criminal offense in Switzerland.

As to the second prong of dual criminality, the Court finds that embezzlement as defined in Article 140 of the Swiss Penal Code, is also a crime in the State of Florida. Embezzlement is covered by Florida's general theft statutes. *See* Fla.Stat. §§ 812.012(2)(d), 812.014(1). Consequently, embezzlement as alleged in the Swiss extradition warrant satisfies the dual criminality requirement.

The Court also finds that embezzlement is listed among extraditable crimes in Article II, section 6 of the treaty. That section covers "[e]mbezzlement by public officials or by other persons, to the prejudice of their employers; larceny; obtaining money or other property by false pretenses; receiving money, valuable securities or other property, knowing the same to have been embezzled, stolen or fraudulently obtained...." Polo argues that the first phrase of section 6 restricts extradition of embezzlers to public officials or employees only. Presumably, this assertion is rooted in the phrase "to the prejudice of their employers". Polo's argument is, essentially, that since he was the top person in his investment organization, he had no employer other than himself and thus is not covered by the treaty. The Court considers this argument meritless and finds that Polo was an employee. Polo engaged in the investment business through a corporation, PAMG, S.A. Since he was working for a business that was incorporated, he was an employee of that corporation. Even if, arguendo, the first phrase of section 6 does not apply to Polo, embezzlement as charged by the Swiss magistrate is clearly covered in other parts of the treaty. The scope of coverage of the treaty is extremely broad. Section 6 continues, "obtaining money or other property by false pretenses; receiving money, valuable securities or other property, knowing the same to have been embezzled, stolen or fraudulently obtained". Additionally, section 7 of Article II adds to the list of enumerated theft crimes covered by the treaty: "Fraud or breach of trust, committed by

---

4. Not all conduct that may be a crime in both the requested and requesting states will be subject to extradition. In those cases where a treaty governs extradition relations, the treaties "either list the offenses for which extradition shall be granted or designate a formula by which you determine extraditable offenses."

*United States v. Herbage*, 850 F.2d 1463, 1465 (11th Cir.1988), *cert. denied*, 489 U.S. 1027, 109 S.Ct. 1158, 103 L.Ed.2d 217 (1989) (citation omitted).

a fiduciary, ... or by the president, a member or an officer of a corporation or association...." Regardless of any arguments concerning the employee restriction on embezzlers, the Court finds that embezzlement as charged in the Swiss warrant is unquestionably an offense specifically covered by these other sections of the treaty. Therefore, the Court holds that embezzlement as charged in the Swiss warrant is an extraditable offense.

■ Lastly, the Court also finds that unfaithful management meets the dual criminality test and is covered by the treaty. Regarding dual criminality, the Swiss warrant states that Polo's acts constitute a violation of Swiss Penal Code § 159. "The facts described above constitute the following crimes under the Swiss Penal Code: Dishonest management, (Article 159), defined as the undermining of the pecuniary interest of others by a person having a legal or contractual obligation to safeguard the pecuniary interests of others." Swiss Extradition Warrant at 16. Thus, unfaithful management is a violation of Swiss Penal Code § 159. It is also a crime in the State of Florida. Florida's general theft statute criminalizes "conduct previously known as ... embezzlement; misapplication; misappropriation; conversion; or obtaining money or property by false pretenses, fraud, or deception." Fla.Stat. § 812.012(2)(d). While the language is not identical, the essential character of the acts allegedly committed by Polo are made criminal by both statutes. *Wright v. Henkel,* 190 U.S. 40, 58, 23 S.Ct. 781, 785, 47 L.Ed. 948 (1903); *Artukovic v. Rison,* 784 F.2d 1354, 1356 (9th Cir.1986). "The law does not require that the name by which the crime is described in the two countries shall be the same...." *Collins v. Loisel,* 259 U.S. 309, 312, 42 S.Ct. 469, 470–71, 66 L.Ed. 956 (1922). Consequently, the dual criminality requirement is satisfied.

The Court also concludes that unfaithful management is specifically covered by the treaty. Article II, section 7 of the treaty lists "fraud or breach of trust, committed by a fiduciary, ... or by the president, a member or an officer of a corporation or associa-

tion" as an extraditable theft offense. While the specific phrases "unfaithful management" or "dishonest management" do not appear in the treaty verbatim, Polo's acts as alleged in the Swiss warrant are covered by section 7. In fact, there is almost no better definition of "unfaithful management" than "fraud or breach of trust committed by a fiduciary". As the offense is covered by the treaty and satisfies the dual criminality requirement, unfaithful management as charged in the Swiss extradition warrant is an extraditable offense.

## PROBABLE CAUSE

■ To certify an extradition warrant, a magistrate need only find probable cause that "the evidence [is] sufficient to sustain the charge". 18 U.S.C. § 3184; *see Jimenez v. Aristeguieta,* 311 F.2d 547, 562 (5th Cir. 1962), *cert. denied,* 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1963) ("the extradition magistrate merely determines probable cause, making an inquiry like that of a committing magistrate and no more"); *United States v. Barr,* 619 F.Supp. 1068, 1071 (E.D.Pa.1985) (In international extradition proceedings, "probable cause is measured by the federal standard used in preliminary proceedings."). Further, 18 U.S.C. § 3184, the jurisdictional statute, is not discretionary. It mandates that where the probable cause threshold is reached, the presiding judge "*shall* certify" that evidence sufficient to sustain the charge has been shown.

■ The scope of review of a habeas corpus petition is extremely limited. Hence, a court reviewing an extradition order shall deny the *habeas corpus* petition upon the showing of any evidence supporting the magistrate's certification. However, in assessing Polo's *habeas corpus* petition and claim that he did not violate the Swiss statute, the Court has gone beyond the minimal procedural analysis required of a reviewing court and examined the entire record, *de novo,* including the transcript of the final extradition hearing before Magistrate Judge Bandstra and all of the admitted exhibits.[5] A

---

5. At a status hearing subsequent to the filing of this petition, counsel agreed that there was no

need for a second evidentiary hearing, thus the Court has, with the agreement of the parties,

review of that evidence indicates a sufficient showing of fraud, embezzlement, and unfaithful management by Polo. The Court holds that the record contained sufficient evidence to warrant the Magistrate's finding that the government demonstrated probable cause to believe the accused guilty.

It is not disputed that Polo spent vast amounts of money on various artworks and jewelry. The central issue in the crimes charged by the Swiss Magistrate is whether Polo had the authority to invest his clients' money in anything other than short-term time deposits. The government asserts that he did not; the petitioner claims that he did. Both parties have presented credible evidence in support of their conflicting positions. For purposes of habeas review, if evidence is presented which is sufficient to establish probable cause that Polo did not have the authority to invest in anything other than time deposits, then, even in the face of contradicting evidence, an extradition order is properly certified.[6]

The government has presented the affidavit of Alfredo Ortiz–Murias in which he states that, regarding the Private Asset Management Group, Inc., "there was no authorization whatsoever to invest in anything else but short term time deposits."[7] As to Dr. Mario Martinez Manautou, Murias stated that, with the exception of a single gold purchase, the Doctor gave no authorization, verbal or otherwise, to invest in anything other than short-term time deposits.[8]

The government also proffered the affidavit of Pablo Aramburuzabala who invested approximately $20,000,000 with "Roberto Polo and his investment advisory vehicles, Private Asset Management Group, Inc., PAMG, Ltd. and PAMG. S.A. (collectively

"PAMG")."[9] He declared "I can state unequivocably [sic] that I did not authorize Roberto Polo to purchase works of art, jewelry and furniture with my money, or otherwise to use my funds to support his extravagant lifestyle. His claim is preposterous."[10]

Additionally, Mario Alvarez testified at the extradition hearing before Magistrate Judge Bandstra that Polo did not have the discretion to invest in art. Alvarez stated that he was present when Polo advised his father and Mr. Fernandez of the possibility of investing in art. According to Alvarez, the two rejected the idea. Also, Alvarez reported that his father and Mr. Fernandez told Polo they did not want their money invested in "art objects" but rather wanted to continue having their money invested in fixed time-limit deposits.[11]

In response, Polo has introduced contradictory evidence in support of his claim that he did, in fact, have the authorization of his investors to invest in art. At the extradition hearing before Magistrate Judge Bandstra, Polo introduced a general power of attorney which empowered him to "manage the investment of assets owned directly or indirectly by the principal Emilio Martinez Manautou on a discretionary basis" and sanctioned investments in "stocks, bonds or other securities or valuables." The petitioner also introduced the affidavit of Robert Taddei who attested that he overheard Polo and Pablo Aramburuzabala talking about Polo's investing millions of dollars in paintings on Aramburuzabala's behalf on a discretionary basis. Taddei further stated in his affidavit that on two occasions he installed paintings Polo purchased in residences belonging to Aramburuzabala in the presence of Aramburuzabala.

---

limited its hearings to oral argument. Petitioner's subsequent Motion for Remand and/or To Supplement the Record filed on May 21, 1993, after the status hearing, has been separately denied.

6. In the court's analysis of whether there was competent evidence to sustain the charge presented to the magistrate, conflicting evidence may be excluded. "[I]t is well-established that 'extradition proceedings are not to be converted into a dress rehearsal trial.'" *Koskotas v. Roche*, 931 F.2d 169 (1st Cir.1991) (citation omitted).

7. Affidavit of Alfredo Ortiz–Murias at 42.

8. *Id.* at 60–61.

9. Affidavit of Pablo Aramburuzabala (Government's Exhibit 8) at ¶ 1.

10. *Id.* at ¶ 6.

11. Transcript of extradition hearing before Magistrate Judge Ted E. Bandstra December 14, 1992 at 60.

Polo asserts [12] that he is a renowned art investment advisor and PAMG, Inc.'s attraction to its clients was its diversified offering of investment services which included works of art, jewelry, gemstones, real estate and the like. PAMG, Inc.'s promotional brochure indicated that it invested in artwork and was registered with the SEC as such. Furthermore, Polo has pointed out allegations calling into question whether the Swiss Magistrate actually interviewed Polo's former employees as he states in the warrant.[13]

Despite the contradictions which create a reasonable doubt about the government's allegations, the Court holds that the evidence offered by the government supports the Magistrate's finding of probable cause that the accused is guilty of the crimes charged. The Court, of course, realizes that the standard of such proof as presented before the Magistrate does not rise to the level required in our criminal courts for conviction. In fact, there is ample evidence contradicting and impeaching the witnesses on which the government relies in establishing probable cause. However, a trial on the merits or any weighing of the evidence is beyond the powers of this Court upon limited review of the extradition order.

### TERRITORIALITY

■ Lastly, the Court addresses the territoriality issue. Article I of the Treaty limits extradition to crimes "committed in the territory of one of the contracting states." Polo asserts that Swiss territorial jurisdiction has not been adequately demonstrated as he has not been specifically linked to any criminality in Switzerland.

The government contends, and the Court accepts, under the authority of *Melia v. United States,* 667 F.2d 300, 303 (2d Cir. 1981), that a demonstration of territorial jurisdiction of the demanding nation is not a prerequisite necessary for certification of a judicial extradition order. Regardless, the Court finds that the territoriality require-

ment of the Treaty has been met. The petitioner asserts a hyper-technical argument concerning this issue. It is undisputed that Polo operated an investment business through PAMG, S.A. which was based in Geneva, Switzerland. The Court finds that this alone satisfies the Treaty's territoriality requirement. Further, as discussed above, probable cause has been shown that he acquired and used the investment funds fraudulently. A reviewing court should not read treaties in a manner which restricts the contracting states' rights. *See Factor v. Laubenheimer,* 290 U.S. 276, 293–94, 54 S.Ct. 191, 195–96, 78 L.Ed. 315 (1933); *Bingham v. Bradley,* 241 U.S. 511, 517, 36 S.Ct. 634, 637, 60 L.Ed. 1136 (1916); *McElvy v. Civiletti,* 523 F.Supp. 42, 49 (S.D.Fla.1981).

### CONCLUSION

The Court holds that 1) Magistrate Judge Ted E. Bandstra had proper jurisdiction to certify the extradition warrant, 2) the crimes charged are within the United States/Switzerland extradition treaty, and 3) there was sufficient, albeit not substantial, evidence warranting the finding that there were reasonable grounds to believe the accused guilty.

The Court is asked by Polo to consider the results of extraditing an individual to a country that allegedly fails to reciprocate extraditing those individuals sought by the United States in conjunction with the allegations of misconduct by the Swiss Magistrate. Nonetheless, these concerns cannot influence the Court's decision. They are more properly directed to the executive branch, specifically to the State Department.

> The general rule is that an argument of this kind is not properly addressed to the court in the extradition hearing, but must be made to the Department of State, which has the primary responsibility for determining whether the treaties with foreign countries are being properly respected and carried out. The Department of State has

---

12. Polo did not testify at the evidentiary hearing before the Magistrate.

13. However, even if the Court were to assume that no former employees were interviewed by

the Swiss Magistrate, the other evidence offered by the government independently exceeds the probable cause threshold.

the discretion to deny extradition on humanitarian grounds....

*In re Sindona,* 450 F.Supp. 672, 694 (S.D.N.Y.1978). Accordingly, it is

ADJUDGED that the petition for writ of *habeas corpus* is DENIED.

DONE AND ORDERED.