UNITED STATES of America,
Plaintiff–Appellee,

v.

Joaquin Osváldo GALLO–CHAMORRO,
Defendant–Appellant.

Nos. 91–5949, 92–4003.

United States Court of Appeals,
Eleventh Circuit.

March 23, 1995.

Miguel Del Aguila, P.A., Arthur Joel Berger, Miami, FL, for appellant.

Lisa T. Rubio, Linda Collins Hertz, Dawn Bowen and Thomas O'Malley, Miami, FL, for appellee in No. 91–5949.

Dexter Lehtinen, U.S. Atty., Lisa T. Rubio, Linda Collins Hertz, Dawn Bowen, Thomas O'Malley, Miami, FL, for appellee in No. 92–4003.

Before KRAVITCH and CARNES, Circuit Judges, and FAY, Senior Circuit Judge.

FAY, Senior Circuit Judge:

In this appeal the Defendant contends that a jury instruction on co-conspirator liability based on *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), violated the terms of an extradition agreement between the United States' and Colombian governments which prohibited the use of 18 U.S.C. § 2, an aiding and abetting statute, in trying the Defendant. Under *Pinkerton* each member of a conspiracy is criminally liable for all reasonably foreseeable crimes committed during the course and in furtherance of the conspiracy. Because criminal liability based on the *Pinkerton* jury instruction does not equate to criminal liability for aiding and abetting under 18 U.S.C. § 2, we find that the district court complied with the terms of the extradition agreement and AFFIRM.

## I. BACKGROUND

The Defendant, Joaquin Osvaldo Gallo-Chamorro ("Gallo"), a Colombian national, was arrested in Bogota, Colombia, on January 9, 1990. On January 11, 1990, the United States requested Gallo's provisional arrest. Two months later the United States submitted Diplomatic Note 206 to the Republic of Colombia ("Colombia"), requesting Gallo's extradition to the United States to stand trial for several narcotics trafficking crimes, including violations of 18 U.S.C. § 2, an aiding and abetting statute. The United States requested Gallo's extradition in accordance with Colombia's Decree Number 1860 of 1989.[1]

On September 5, 1990, the Colombian government by resolution extradited the Defendant to the United States for trial on one count of importation of cocaine in violation of sections 952(a) and 960(a)(1) of Title 21 of the United States Code, one count of conspiracy to distribute cocaine in violation of section 846 of Title 21 of the United States Code, and three counts of distribution of cocaine in violation of section 841(a)(1) of Title 21 of the United States Code. The extradition document, Resolution Number 235 of the Colombian Ministry of Justice, denied extradition of Gallo on all other counts and stated that "[t]he [Colombian] Supreme Court of Justice has manifested on several occasions that the violation of Title 18, Section 2, of the United States Code does not has [sic] its equivalent in Colombia, and therefore it does not authorize, either, the extradition for this concept." Section 2 of Title 18 of the United States Code reads as follows:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2 (1969). The resolution also specified that, if extradited and convicted, Gallo must not be sentenced to prison for more than thirty years.

---

1. The United States and Colombia entered into an extradition treaty on September 14, 1979. Colombia ratified the treaty by its Law 27 of 1980, and the United States ratified the treaty on November 20, 1981. In 1986, the Colombian Supreme Court held that Law 27 was unconstitutional because it had been sanctioned by a Colombian government official other than the President of Colombia. Because of this ruling, the treaty remains inapplicable in Colombia. 1SR3–330–1–4. However, in 1989, the President of Colombia, pursuant to his martial law powers, issued Decree Number 1860 which provides in pertinent part that "for the purpose of extradition of Colombian and foreign nationals sought for [narcotics trafficking and related] offenses, the procedure set forth in the Code of Criminal Procedure shall be applied, with the modifications set forth herein." *Id.* The issuance of this decree suspended Colombia's requirement that Colombian nationals be extradited only pursuant to public treaties. *Id.*

■ Prior to trial, Gallo filed a Motion to Enforce Rule of Specialty, arguing that he could not be prosecuted under 18 U.S.C. § 2 according to the extradition papers and the specialty doctrine. The specialty doctrine is a principle of international law that stands for the proposition that

> the requesting state, which secures the surrender of a person, can prosecute that person only for the offense for which he or she was surrendered by the requested state or else must allow that person an opportunity to leave the prosecuting state to which he or she had been surrendered.

*United States v. Herbage,* 850 F.2d 1463, 1465 (11th Cir.1988), *cert. denied,* 489 U.S. 1027, 109 S.Ct. 1158, 103 L.Ed.2d 217 (1989) (citations omitted). The government responded that the doctrine of specialty is not applicable to a statute such as 18 U.S.C. § 2, which does not create a substantive offense. Alternatively, the government argued that it was entitled to a jury instruction pursuant to *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). In *Pinkerton,* the Supreme Court held that a co-conspirator could be guilty of a substantive offense even though he did no more than join the conspiracy, provided that the offense was reasonably foreseeable and was committed in furtherance of the conspiracy. *Pinkerton,* 328 U.S. at 647–48, 66 S.Ct. at 1184; *see also Nye & Nissen v. United States,* 336 U.S. 613, 618, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949). Instructing juries on this concept has come to be known as a *"Pinkerton* instruction."

The district court granted Gallo's motion regarding 18 U.S.C. § 2 and, in compliance with the specialty doctrine, omitted 18 U.S.C. § 2 from all counts in the redacted indictment submitted to the jury and did not include the standard aiding and abetting instruction when it charged the jury. The district court deferred ruling on the *Pinkerton* issue until the conclusion of the trial.

We find it unnecessary here to reiterate the extensive evidence presented at trial, but suffice it to say that the record is clearly sufficient to support the jury verdicts.

At the close of the evidence, the government submitted a request for a *Pinkerton* instruction as to the importation count, contending that the instruction would not violate the specialty doctrine because its application would not result in Gallo being tried for any offense other than those for which he had been extradited.[2] Gallo responded that Colombia had extradited him to be tried only as a principal, not as an aider and abettor, and that the *Pinkerton* instruction is a "constructive theory of liability" to which Colombia would have objected.[3] R10–1211–13, 1216. The district court was not persuaded by Gallo's argument that aiding and abetting is the same as co-conspirator liability under *Pinkerton.* The court stated that "[a]iding and abetting is not the same as conspiracy, and *Pinkerton* is based on conspiracy. I think there is a distinction there." R10–1216.

The district court overruled Gallo's objection to the *Pinkerton* charge.[4] The jury was instructed on the theory of co-conspirator liability under *Pinkerton* as to the importation count only.[5] During its deliberations,

---

2. Additionally, the government argued that Colombia had extradited Gallo on the importation count knowing that someone other than Gallo had actually transported the cocaine into the United States, thereby recognizing the concept of vicarious criminal liability embodied in *Pinkerton.*

3. Responding to the government's claim that Colombia extradited Gallo for importation, knowing based on the facts that Gallo was only vicariously liable for that count, Gallo's attorney argued that "the Government of Colombia does have, as all the other countries do have statutes in the book that would prohibit the action complained of by the Government against Mr. Gallo, importation. It is accessory before the fact, and accessory after the fact if you aid and abet. He (Gallo)

wasn't charged with that. He came here as a principal."

4. The district court had also previously denied Gallo's motion for judgment of acquittal on the importation count, holding that the evidence against Gallo on that charge was sufficient under *Pinkerton.*

5. The *Pinkerton* instruction read in pertinent part:

> [A] Defendant found guilty of a conspiracy offense may be found guilty of a substantive count even though he, the Defendant, did not participate in the importation of cocaine. The reason for this is that a co-conspirator committing a substantive offense, such as the importa-

the jury inquired whether the *Pinkerton* instruction applied only to the importation count or to all counts. Over Gallo's objection, the district court instructed the jury that the *Pinkerton* instruction applied to the three distribution counts as well.

The jury convicted Gallo of three counts of distribution of cocaine and one count of importation of cocaine, but acquitted Gallo of conspiracy to distribute cocaine. Gallo moved for a new trial and/or to vacate the judgment as to the importation count. He claimed that the district court erred in giving the *Pinkerton* instruction and that the verdicts were inconsistent because the jury found Gallo guilty of importation while finding him not guilty of conspiracy.[6] The district court denied Gallo's motion.

At sentencing, Gallo advised the district court that the Colombian government had sent a diplomatic note to the United States formally protesting the *Pinkerton* jury instruction in Gallo's case. Gallo was unable to provide documentation of the protest at sentencing. The district court overruled his ob-

tion of cocaine, in furtherance of a conspiracy is held to be the agent of the other conspirators and his acts can bind them and be attributed to them just as if they had committed the substantive offenses.

In other words, if you find by proof beyond a reasonable doubt that (1) a conspiracy existed; (2) the Defendant was one of the Conspirators; (3) the act of importing cocaine into the United States was reasonably foreseeable and was done by any one or more co-conspirators other than the Defendant during the pendency of and in furtherance of such conspiracy, then those acts of the co-conspirators are attributable to the Defendant as if he himself had performed those acts. 1SR3–364–18–19.

6. Gallo's argument that the verdicts are inconsistent is premised on the idea that the jury would have to find Gallo guilty of conspiracy (Count I) in order to find him guilty of importation (Count V) because the evidence shows that Gallo did not actually transport the cocaine into the United States himself. Therefore, Gallo argues, he could only have been found guilty of importation under the *Pinkerton* co-conspirator theory.

Upon review of the record, we find that the verdicts may be read as consistent because the jury could have found from the evidence that Gallo was involved in more than one conspiracy. We also note that it would make no difference in our analysis if the verdicts were inconsistent. *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (that a jury reaches

jection.[7] The district court sentenced Gallo to thirty years of imprisonment and five years of supervised release on each count to run concurrently.

Gallo then filed this appeal, arguing that the district court erred in giving the *Pinkerton* instruction to the jury because co-conspirator liability based on the *Pinkerton* instruction equates to criminal liability based on 18 U.S.C. § 2, and therefore the instruction violated the specialty doctrine by ignoring an express prohibition of the extradition agreement.

## II. STANDARD OF REVIEW

■ The district court's ruling that criminal liability based on the *Pinkerton* co-conspirator jury instruction is not the same as criminal liability for aiding and abetting, 18 U.S.C. § 2, is a legal conclusion. We review the district court's conclusions of law *de novo*. *Newell v. Prudential Ins. Co.*, 904 F.2d 644, 649 (11th Cir.1990).

what might be construed as inconsistent verdicts is not an adequate ground for reversal); *see United States v. Hope*, 901 F.2d 1013, 1020 n. 12 (11th Cir.1990), *cert. denied*, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991).

7. Seven days after sentencing, Gallo filed Diplomatic Note E–1518 in which the Colombian Government advised the United States Department of State that it had received information that:

[T]he trial judge, the Honorable James C. Paine, pursuant to the prosecution's request instructed the jury that it could find Mr. Gallo Chamorro guilty of the substantive offenses charged in the indictment under the "Pinkerton" theory of criminal liability. The Pinkerton theory, which is wholly vicarious in nature is not recognized by Colombia since, like U.S.C. Section 2, it has no comparable legal concept in the Colombian Criminal Code.

By instructing the jury that it could find Mr. Gallo Chamorro guilty of the substantive crime charged under a theory of vicarious criminal liability, not recognized by Colombia, the trial judge violated the extradition Resolution, and other principles of international law.

. . . .

. . . The terms under which Mr. Gallo Chamorro's extradition was granted have not been complied with [sic] the Embassy requests that the appropriate actions be taken to reinstate his rights and comply with the terms of the extradition. 1SR3–381–2.

## III. ANALYSIS

### A. The Doctrine of Specialty

We begin our analysis by examining the doctrine of specialty, or specialty doctrine, and determining what the doctrine requires under the facts of the case at hand.

In *United States v. Rausher,* 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886), the Supreme Court established the rule of law that the courts of this country will not try a defendant extradited from another country on the basis of a treaty obligation for a crime not listed in the treaty. *Id.* at 424, 7 S.Ct. at 243. This principle has been extended to bar prosecution for crimes for which, for whatever reason, extradition was not granted. *See United States v. Archbold–Newball,* 554 F.2d 665, 685 n. 21 (5th Cir.), *cert. denied,* 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1977) (citations omitted).[8]

In applying the doctrine of specialty, this court has found that:

It is clear, however, that even as the specialty doctrine has been defined and broadened in this century, it has never been construed to permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state, as distinguished from limiting the jurisdiction of domestic courts to "try or punish the fugitive for any crimes committed before the extradition, except the crimes for which he was extradited." Friedmann, Lissitzyn & Pugh; International Law 493 (1969). Where .... a defendant is indicted and tried for the precise offense contained in the foreign extradition order ..., the doctrine does not authorize us to disregard normal evidentiary rules followed by this forum.

*Archbold–Newball,* 554 F.2d at 685 (quoting *United States v. Flores,* 538 F.2d 939, 944 (2d Cir.1976)); *see United States v. Alvarez–Moreno,* 874 F.2d 1402, 1414 (11th Cir.1989), *cert. denied,* 494 U.S. 1032, 110 S.Ct. 1484, 108 L.Ed.2d 620 (1990) ("When a grand jury indicts a defendant, and the defendant is tried for the precise offense contained in the extradition order, the doctrine of specialty

does not purport to regulate the scope of proof admissible in the judicial forum of the requisitioning state.").

Gallo's case is not unlike the situation faced by the Eighth Circuit in *United States v. Thirion,* 813 F.2d 146 (8th Cir.1987). In *Thirion,* the asylum country had extradited the defendant on several substantive charges, but specifically had denied extradition on a conspiracy charge. Over the defense's objection, the jury was instructed on co-conspirator liability under *Pinkerton* for the substantive charges. The Eighth Circuit held that the defendant's convictions on the substantive charges as a co-conspirator under *Pinkerton* did not violate the specialty doctrine because the defendant "was tried only for those crimes for which he was extradited." *Thirion,* 813 F.2d at 152–53. The court reasoned that because the doctrine of specialty does not alter existing rules of evidence or procedure, it could not prohibit giving the jury a *Pinkerton* instruction which permitted the government to establish the defendant's membership in a conspiracy as an evidentiary fact to prove guilt in the related substantive offenses. *Id.*

We find this reasoning persuasive. Gallo was tried only for the crimes for which he was extradited. The district court took great pains to eliminate all references to 18 U.S.C. § 2 from Gallo's indictments and did not instruct the jury on aiding and abetting. Because we find that the *Pinkerton* jury instruction is not equivalent to a jury instruction on aiding and abetting, 18 U.S.C. § 2, we hold that the district court was well within its bounds of discretion in giving the *Pinkerton* instruction to the jury. In support of this conclusion, we find it necessary to more clearly distinguish the *Pinkerton* instruction from the principle of aiding and abetting found in 18 U.S.C. § 2.

### B. Aiding and Abetting versus *Pinkerton* Co–Conspirator Liability

We agree with the district court that criminal liability for aiding and abetting under 18

---

**8.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

U.S.C § 2 is not the same as co-conspirator liability under *Pinkerton.* The Defendant argues that because aiding and abetting and *Pinkerton* co-conspirator liability are founded on the same principle of vicarious liability,[9] they are the same. However, in *Nye & Nissen v. United States,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919, the Supreme Court distinguished between these two principles of criminal liability:

> The rule of ... [*Pinkerton* ] does service where the conspiracy was one to commit offenses of the character described in the substantive counts. Aiding and abetting has a broader application. It makes a defendant a principal when he consciously shares in any criminal act whether or not there is a conspiracy ... *Pinkerton v. United States* is narrow in its scope. Aiding and abetting rests on a broader base; it states a rule of criminal responsibility for acts which one assists another in performing. The fact that a particular case might conceivably be submitted to the jury on either theory is irrelevant.

*Id.* at 620, 69 S.Ct. at 770.

Clearly, *Pinkerton* liability, which requires the defendant's participation in a conspiracy, is much narrower in scope than aiding and abetting. Although we agree that the extradition papers prohibited the use of 18 U.S.C. § 2 in trying the Defendant, we find unpersuasive the Defendant's argument that the "*Pinkerton* doctrine is ... a variant of 18 United States Code Section 2." Appellant's Br. at 12.

We now turn to the Defendant's argument that the doctrine of dual criminality prohibits trying the Defendant under any theory of vicarious criminal liability, including the *Pinkerton* theory.

### C. The Doctrine of Dual Criminality

■ The doctrine of dual or double criminality is distinct from the doctrine of specialty.

> Double criminality refers to the characterization of the relator's criminal conduct insofar as it constitutes an offense under the laws of the respective states ... 'Double criminality' is in effect a reciprocity requirement which is intended to ensure each of the respective states that they (and the relator) can rely on corresponding treatment, and that no state shall use its processes to surrender a person for conduct which it does not characterize as criminal.

*United States v. Herbage,* 850 F.2d 1463, 1465 (11th Cir.1988) (quoting M. Bassiouni, International Extradition: United States Law and Practice vol. 1, ch. 7, sec. 3, pp. 324–25 (2d rev. ed. Nov. 1987)). Gallo asserts that although "[i]n the lower court, all parties treated the issue as involving the rule of specialty ... the concept that the country of Colombia was asserting was the concept of dual criminality." Appellant's Br. at 11. Gallo further argues that "[a]ny misuse of labeling does not detract from the substance of what was argued, namely that this instruction violated the agreement." *Id.* Gallo now argues on appeal that under the doctrine of dual criminality his convictions cannot stand because they are based on a theory of vicarious liability, namely *Pinkerton,* that Colombia does not recognize. We find, however, that because Gallo did not properly raise the issue of dual criminality before the district court, he has waived his right to raise it here.

■ To preserve an issue for appeal, a general objection or an objection on other grounds will not suffice. *United States v. Dennis,* 786 F.2d 1029, 1042 (11th Cir.1986), *cert. denied,* 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987). This court may entertain an argument not raised below if it involves a pure question of law and if refusal to consider it would result in a miscarriage of justice. *See Baumann v. Savers Federal Savings & Loan Assoc.,* 934 F.2d 1506, 1512 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992) (citations omitted). This court, however, will not make an exception "if additional facts would have been developed in the trial court had

---

9. *See Pinkerton,* 328 U.S. at 647, 66 S.Ct. at 1184. In discussing the basis for co-conspirator liability for substantive offenses, the Court stated that "[t]he rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle." *Id.*

**508**

the new theory been presented there." *Smith v. Horner,* 839 F.2d 1530, 1534–36 (11th Cir.1988) (quoting *Higginbotham v. Ford Motor Co.,* 540 F.2d 762, 768 n. 10 (5th Cir.1976)).

In this case, it is unclear from the record why Colombia extradited Gallo for the importation count. Gallo argues that Colombia extradited him only as a principal, however the government argues that Colombia extradited him for importation knowing that he was only vicariously liable for that count. Gallo responds in turn that Colombia does not recognize vicarious criminal liability. Unfortunately, we cannot find the answers to these questions in the record upon which we must rely. Had Gallo properly raised the theory of dual criminality in the district court, this factual dispute could have been more fully developed and perhaps reconciled. Thus, in cases such as this, where the record is incomplete, "judicial economy is served and prejudice is avoided by binding the parties to the facts presented and the theories argued below." *Horner,* 839 F.2d at 1536. Therefore, we decline to consider Gallo's dual criminality argument, and find that, based on the doctrine of specialty, the district court fully complied with the extradition agreement.

### D. Diplomatic Note E–1518

■ In Gallo's motion for a new trial, he submitted for the first time Diplomatic Note E–1518, a note sent from the Colombian government to the United States Department of State protesting the district court's use of the *Pinkerton* theory in convicting Gallo for his substantive crimes on the grounds that the theory is not recognized in Colombia. We find this note has no persuasive or precedential value in this case. Although extradition agreements and the specialty doctrine undeniably control the United States courts' jurisdiction over foreign defendants such as Gallo, these international principles of law cannot be "construed to permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state." *United States v. Archbold–Newball,* 554 F.2d 665, 685 (5th Cir.), *cert. denied,* 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1977).

### IV. CONCLUSION

Because we agree with the district court that criminal liability based on the *Pinkerton* instruction is not equivalent to criminal liability for aiding and abetting under 18 U.S.C. § 2, we find that the *Pinkerton* instruction did not violate the extradition agreement or the doctrine of specialty and WE AFFIRM.

AFFIRMED.