[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10248
Non-Argument Calendar
_____

D.C. Docket No. 1:07-cr-20999-JAL-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANKLIN DURAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 9, 2012)

Before HULL, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Franklin Duran appeals the district court's denial of his motion for a new

trial in which he alleged that the government proffered false testimony from its key witness at trial, in violation of *Giglio v. United States*, 405 U.S. 150 (1972). After a thorough review of the record, we affirm.

Duran and four others were charged with conspiring to act, and acting, as agents of Venezuela in the United States, in violation of 18 U.S.C. §§ 371 and 951 respectively. Duran was convicted in 2008 and sentenced to forty-eight months' imprisonment.[1] His conviction was affirmed on direct appeal. *See United States v. Duran*, 596 F.3d 1283 (11th Cir. 2010).

In October 2011, Duran filed a motion for a new trial under Federal Rule of Criminal Procedure 33, alleging a *Giglio* error.[2] According to the motion, Duran had discovered that Carlos Kauffmann, his former business partner and a co-conspirator who testified against him, had filed an application for asylum before trial, and that the government knew of the application and failed to correct Kauffmann's trial testimony to the contrary. Specifically, Kauffmann testified at trial that, as part of his plea agreement, the government had promised that Kauffmann and his family would not be deported to Venezuela after Kauffmann served his prison sentence, but that instead he would be deported to any other

---

[1] A full recitation of the evidence at trial is presented in our prior opinion and we do not recount them here except as relevant to the motion for a new trial.

[2] Duran's new trial motion is timely because it was filed within three years of his conviction. Fed. R. Crim. P. 33(b)(1).

country that would accept him. The plea agreement made no mention of Kauffmann seeking asylum in the United States, and Kauffmann testified that no other promises had been made in exchange for his testimony.[3] But Kauffman did, in fact, apply for asylum in the United States, and after Duran's trial was over, the prosecutors in Duran's case supported Kauffmann's asylum application.

Along with his motion for a new trial, Duran filed a discovery motion, requesting that the government produce Kauffmann's asylum application, the prosecutors' files concerning Kauffmann's asylum application, and any communications between the prosecutors, the Department of Homeland Security, and U.S. Immigration and Customs Enforcement officials regarding Kauffmann's application.

The district court instructed the parties to submit affidavits related to

---

[3] Kauffmann testified to various kickback schemes he and Duran engaged in during their business dealings with the Venezuelan government. On cross-examination, defense counsel asked Kauffmann, "And there is a provision in your plea agreement . . that calls for the Government to recommend that you would not be deported from the United States. Correct?" The government objected, asserting that the question misstated the terms of the plea agreement. Defense counsel corrected the question and then asked Kauffmann if, based on this deal, he was free to say whatever he wanted about the Venezuelan Government. Kauffmann replied that this was correct. In his motion for a new trial, Duran contends that the government's objection enabled Kauffmann's false testimony to stand and, had the government not interrupted, counsel would have shown the falsity of Kauffmann's testimony. But Duran is mistaken because counsel's question actually misstated the terms of the plea agreement. Thus, the government's objection did nothing to allow the alleged perjury.

Duran's allegations.  Duran submitted an affidavit from the immigration attorney who represented him in his deportation proceedings after his conviction.[4]  The affidavit explained that Kauffmann could have been motivated to testify for the government at Duran's trial to support his asylum application.[5]

The government submitted affidavits from the prosecutors, Kauffmann's attorneys, and the FBI agents involved in the case.  The prosecutors and the FBI agents confirmed that they had no knowledge of Kauffmann's asylum application at the time of trial.  The prosecutors also stated that there was no agreement with Kauffmann other than the plea agreement.  Kauffmann's attorneys stated that they had not informed the prosecutors or FBI agents that Kauffmann had, or planned to, file an asylum application.

The district court denied the motion for a new trial, finding that there was no evidence Kauffmann's testimony was false and that Duran had not met his burden to show any *Giglio* violation.  The court also noted that, even if the

---

[4] Duran submitted a second affidavit from another immigration attorney involved in his case. This affidavit did not address Kauffmann's testimony or asylum application.

[5] According to the immigration attorney's affidavit, the merits of Kauffmann's asylum application involved Kauffmann's fear of the Venezuelan government, which was established and supported by his testimony at Duran's trial. Providing support for his asylum application would have motivated Kauffmann to lie at Duran's trial. The immigration attorney also stated that Kauffman would have been ineligible for admission to the United States because he had committed fraud when he entered the United States using false documents. Thus, Kauffmann's only avenue to obtain residency was a waiver of inadmissibility from the government, giving him an additional motive to lie.

testimony had been false, any error was harmless beyond a reasonable doubt in light of the overwhelming evidence and recordings of Duran's own conversations admitted at trial.

On appeal, Duran argues that the information about Kauffmann's asylum application would have substantially impeached Kauffmann's credibility, and that the government's affidavits alone were insufficient to establish that the prosecutors and investigators involved in Duran's case lacked knowledge of Kauffmann's application.  He asserts that the district court should have allowed discovery and conducted an evidentiary hearing.

We review the district court's ruling on a motion for a new trial for abuse of discretion.  *United States v. Isaac Marquez*, 594 F.3d 855, 859-60 (11th Cir. 2010).  Under Rule 33, a "court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed.R.Crim.P. 33(a).  When the resolution of a motion for a new trial is clear, the district court is not required to hold an evidentiary hearing.  *United States v. Jernigan*, 341 F.3d 1273, 1289 (11th Cir. 2003).  "[T]he acumen gained by a trial judge over the course of the proceedings" makes the same court "well qualified" to rule on the motion without holding an evidentiary hearing.  *United States v. Schlei*, 122 F.3d 944, 994 (11th Cir. 1997) (internal quotations marks omitted).  We have declined to order discovery based

5

upon mere speculation as to whether material would contain exculpatory evidence. *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1189 (11th Cir. 2006).

A *Giglio* error occurs when undisclosed evidence demonstrates that the prosecution used perjured testimony and that the prosecution knew, or should have known, of the perjury. *Ford v. Hall*, 546 F.3d 1326, 1331 (11th Cir. 2008). To prevail on a motion for a new trial claim based on a *Giglio* claim, the defendant "must establish that the prosecutor 'knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony,' and that the falsehood was material." *Tompkins v. Moore*, 193 F.3d 1327, 1339 (11th Cir. 1999). For the purposes of a *Giglio* claim, "the falsehood is deemed to be material if there is any reasonable likelihood that the false testimony *could* have affected the judgment of the jury." *Id.* (internal quotation marks omitted).

At issue here is whether the government knew, or should have known, of Kauffmann's asylum application at trial and failed to disclose it. Duran contends that the government failed to disclose this information, which was material because it would have shown the jury that Kauffmann had a motive to fabricate his testimony against Duran. And because Kauffmann's testimony was the "lynchpin" of the government's case, Duran argues, the failure to disclose the government's support for Kauffmann's asylum application was not harmless.

6

We conclude that the district court properly denied the motion for a new trial because Duran has not shown that the government knowingly used, or failed to correct, false testimony.  None of Kauffmann's testimony at trial regarding his plea agreement was false or unsupported by the agreement.  Further, the government's affidavits and declarations submitted in response to the motion for a new trial demonstrated that the prosecutors were unaware of Kauffmann's asylum application at the time of Duran's trial.  Duran has not offered any proof that suggests otherwise, and Duran has given this court no reason to think they should have known about the application.  Because the evidence showed that the prosecutors did not know about Kauffmann's application, Duran has failed to show that a *Giglio* violation occurred.  Additionally, Duran has offered only speculation about possible exculpatory evidence.  Thus, the district court, which had presided over Duran's trial, properly denied his new trial motion without a evidentiary hearing and discovery.  *See Arias-Izquierdo*, 449 F.3d at 1189; *Schlei*, 122 F.3d at 994.

**AFFIRMED**.